ANNA HEIDENREICH, Defendant in Error, *vs.* DAVID F. BREMNER, JR. *et al.* Plaintiffs in Error.

*Opinion filed October 28, 1913—Rehearing denied Dec. 4, 1913.*

1. PARTNERSHIP—*all partners need not be joined in action for tort.* An action for personal injury, due to the negligence of an employee of a partnership, may be brought against the co-partnership as a firm or against any or all of the partners individually, even though the partnership has become a corporation since the cause of action accrued.

2. PRACTICE—*when refusal to instruct the jury to disregard counts is proper.* Instructions to disregard certain counts of the declaration in a personal injury case are properly refused, where they fail to call the attention of the court or the jury to any alleged defects in such counts.

3. NEGLIGENCE—*whether negligence was willful or wanton is a question of fact.* Whether a personal injury has been inflicted by gross or wanton negligence is a question of fact to be determined by the jury and is largely dependent upon the particular circumstances of each case.

4. SAME—*willful negligence does not require proof of ill-will toward injured person.* To constitute willful or wanton negligence it is not necessary to prove that the defendant was actuated by ill-will toward the person injured, but it is sufficient to show that the defendant acted with reckless indifference to consequences and without any care for the life, person or property of others.

5. SAME—*drivers of horses must use greater care at crossings than elsewhere.* Drivers of horses are bound to use a greater degree of care at street crossings in the business portion of a city, where large numbers of persons are constantly using the crossings, than in other portions of the street or at less used crossings.

6. SAME—*when question of willful negligence is properly left to the jury.* Whether the defendants' driver was guilty of an act of willful negligence is a question which is properly left to the jury, where there is evidence, though contradicted, that he was driving a heavy team and wagon at such a rapid rate of speed over a busy street crossing that he was unable to stop the team after they had run over a child at the crossing until they had gone some forty feet beyond the place of the accident.

7. SAME—*failure to look before starting to cross street is not negligence per se.* Failure of a person to look for approaching vehicles before starting across a street at a public crossing is not necessarily negligence *per se* under all circumstances.

8. SAME—*when contributory negligence is no defense.* Contributory negligence is no defense to an action for personal injury, where the evidence shows that the negligence of the defendants' servant which caused the injury was willful and gross.

9. STARE DECISIS—*a rule of law once settled should not be lightly departed from.* Stability and uniformity of decisions conduce so much to the public welfare that when a rule of law contravening no statute or constitutional principles has once been settled it should be followed, unless it can be shown that serious detriment to public interests is likely to arise unless the rule is departed from.

WRIT OF ERROR to the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

BURTON & KANNALLY, and CHARLES LEROY BROWN, for plaintiffs in error.

QUIN O'BRIEN, and O. A. ARNSTON, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action brought by the defendant in error, by her father as next friend, in the circuit court of Cook county, to recover for damages for personal injuries alleged to have been sustained by her April 25, 1907, from being knocked down and run over by a team and wagon. After

the issues were joined a trial was had, and the jury found a verdict in favor of defendant in error, upon which judgment was entered. That judgment was affirmed on appeal to the Appellate Court, and the case has been brought here by writ of *certiorari*.

The suit was started against Bremner *Bros.* Thereafter, on leave of court, David F., James R., John B. and Vincent A. Bremner, doing business as Bremner *Bros.*, were made parties defendant. The original declaration, consisting of two counts, was filed against the four Bremners as co-partners, doing business as Bremner *Bros.* To these counts defendants demurred, but the demurrer was never formally disposed of. Thereafter two amended additional counts were filed by leave of court. To these additional counts defendants filed a plea of general issue, and a further plea alleging that they "were not the owners and in control of certain horses and a certain wagon attached thereto, and were not then and there, by their servants, driving said team of horses attached to said wagon," etc. At the close of plaintiff's case, by leave of court, two additional amended counts were filed against said four partners doing business as Bremner *Brothers.* The defendants' plea of general issue, and the second plea heretofore set out, were allowed, by order of court, to stand as pleas to said last named counts. After verdict, but before judgment, the action was dismissed as to Vincent A. Bremner.

The accident occurred at the corner of Eighteenth street and Center avenue, in the city of Chicago, a little after seven o'clock in the evening. The evidence shows that this crossing was in a thickly populated business section of the city. The street car tracks extended along both Eighteenth street and Center avenue. There was a slight up-grade on Center avenue as one went toward the north, caused by a viaduct north of Eighteenth street and commencing about thirty feet south of that street. The space between the car tracks on Center avenue was paved with cobblestones.

About ten feet south of the south line of Eighteenth street was a switch in the east car track on Center avenue. The street at that point was well lighted with electric street lights, there being at least three large arc lamps on the crossing, one being over the south sidewalk. Defendant in error at the time of the accident was thirteen years of age. She testified that she had left home shortly before to go to a neighbor's, and when returning was crossing Center avenue on the south cross-walk of Eighteenth street and had nearly crossed the east track when she was struck by the horses, knocked down and rendered unconscious. She testified she did not see the horses until they were about four feet from her. The evidence introduced on behalf of defendant in error tended to show that at that time the horses and wagon in question were being driven north on Center avenue and the wheels of the wagon were tracking in the east or north-bound car tracks of that street; that the horses were going at a "pretty fast gait;" that "they were running;" that "they were running fast;" that the east horse knocked the girl down and both of the east wheels of the wagon passed over her left leg; that the horses did not stop until they had crossed to the north of Eighteenth street. The testimony of four or five witnesses on plaintiff's behalf was all to the effect that she was walking from the west on the south cross-walk of Eighteenth street across Center avenue, and was nearly across the east track when she was struck by the east horse and knocked down and run over by the wagon. The bones in her left leg were fractured in several places, and that leg is now deformed and considerably shorter than the other. The evidence tends to show that the lameness and deformity are permanent and will continue to become greater; that prior to the accident she was a strong, healthy girl.

The evidence on behalf of plaintiffs in error tended to show that the driver of the team had slowed down the speed of his team to about five or six miles an hour as he ap-

proached the south cross-walk on Eighteenth street across Center avenue, because of the switch in the car track just south of the said cross-walk; that defendant in error suddenly started from the sidewalk on the east of Center avenue to walk west on said cross-walk, and without looking either to the north or to the south ran into a man crossing in the opposite direction and was knocked by him against one of the horses, whereby the horses became frightened and pranced and that the driver could not stop them until the wagon was twenty feet north of where the accident happened. Witnesses for defendant in error deny that she collided with a man.

The first contention of plaintiffs in error is that the evidence did not show that at the time of the accident they were the owners and in control of the horses and wagon. The briefs of plaintiffs in error filed in the Appellate Court have been filed here by leave, and lend support to defendant in error's contention that some of the points suggested here on this question were not raised in the Appellate Court. We have decided, however, to dispose of this question on other grounds.

Both counsel have discussed exhaustively whether, under the plea of general issue, it is necessary for a plaintiff in a case of this kind to prove the allegation in the declaration as to partnership of the defendants. In view of our conclusion that the evidence in the record tends to prove that plaintiffs in error were a partnership at the time of the accident we need not decide this point.

The second plea did not in any way question the fact of the partnership or that plaintiffs in error were doing business as such partners. The only question raised by that plea was whether said partners owned and controlled the horses and wagon and whether they were being driven by one of their servants. It is contended by counsel for defendant in error that said second plea was, in effect, a plea in abatement, and was therefore waived by filing the plea

of general issue, under the holding of this court in *Keokuk Bridge Co.* v. *Wetzel,* 228 Ill. 253, while counsel for plaintiffs in error contend that the second plea was a plea in bar, and that under it the burden of proof on the question of ownership of the wagon and horses, and of the driver being their servant, rested upon defendant in error. Conceding, for the purposes of this case, that this last contention is correct, the question here raised on this point is one of fact and not of law. The evidence shows that the driver was working for Bremner *Brothers* and that they owned and controlled the wagon and horses. There is evidence in the record, also, fairly tending to support the conclusion that plaintiffs in error were a partnership at the time of the accident and were not incorporated until a month later. On appeal from the Appellate Court to the Supreme Court in an action at law the latter court can only examine the record to the extent of determining whether there is any evidence tending to support the plaintiff's cause of action and whether the rules of law have been properly applied. The weight of the evidence must be submitted to the jury, and when their finding of fact has been approved by the trial and Appellate Courts that approval is binding on this court. *Reiter* v. *Standard Scale Co.* 237 Ill. 374, and cases cited.

In this connection counsel for plaintiffs in error argue that all the partners should be joined where a suit is brought against a partnership after its dissolution. This is not the rule in an action of tort. One or any or all of the partners in a firm may be sued jointly for a wrong committed by any of the firm, and this rule holds good "even when the tort complained of is in no other sense the act of the firm than as being the act of the servant of the firm in the course of his employment." (Dicey on Parties, rule 104, p. 492; 1 Bates on Partnership, sec. 471; Parsons on Partnership,— 3d ed.—*157.) For any wrong that can be considered the act of the firm, the members of the firm are collectively and

individually liable to be sued.  There is no such thing as a joint tórt, for torts are in their nature several.  (Andrews' Stephens' Pl.—2d ed.—sec. 39.)  The dissolution of the firm does not, except in case of dissolution by bankruptcy, change the liability of the partners as to third persons, and the partners are sued after dissolution precisely as before.  (15 Ency. of Pl. & Pr. 878, and cases cited.)  It is no answer for a defendant sued in tort to say that others are guilty with him.  He cannot take steps to compel the plaintiff to make other parties co-defendants.  (Dicey on Parties, rule 98, p. 449; Story on Partnership,—5th ed.— sec. 167; *Wisconsin Central Railroad Co.* v. *Ross,* 142 Ill. 9.)  The reasoning of this court in *Powell Co.* v. *Finn,* 198 Ill. 567, and *Yocum* v. *Benson,* 45 id. 435, is not in point in a tort action.  Those and other like cases cited and relied on by counsel were actions on contracts, where joint liability was required to be proved before there could be a recovery. After the co-partnership ceased by the creation of a corporation, the tort action accruing while the partnership was in existence could be brought against the co-partnership as a firm or against any or all of the partners individually.

Counsel for plaintiffs in error further insist that the court erred in refusing, at the close of the case, to instruct the jury to disregard the first four counts of the declaration.  The first count was one in trespass, and they argue that on the evidence no action was maintainable under the facts shown in this record; that the second count was bad for failing to allege a legal responsibility by the defendants for the acts of the driver; that the third and fourth counts were bad in failing to allege a causal connection between the negligence charged and the injury.  Counsel argue that refusing to give the instructions to disregard these counts was error, because instructions were given for defendant in error which permitted recovery under any of the counts of the declaration,—the first four as well as the last two. Even if the evidence did not sustain all these counts, it

was not error to refuse to, instruct the jury to disregard them, as different acts of negligence may be charged in different counts and if the proof sustains any one of them the plaintiff may recover. (*Scott* v. *Parlin & Orendorff Co.* 245 Ill. 460; *Colesar* v. *Star Coal Co.* 255 id. 532.) Moreover, the court properly refused the instructions to disregard these counts because they failed to call the attention of either court or jury to any supposed defects in any of such counts. *Chicago, Rock Island and Pacific Railway Co.* v. *Clough,* 134 Ill. 586.

.The last of the six counts of the declaration charged plaintiffs in error, through their servant, with gross and wanton negligence in driving their team at a high and dangerous rate of speed towards and upon a public crossing. Plaintiffs in error made no motion in the trial court asking that this count be eliminated or disregarded. They did, however, ask an instruction to the effect that there was no evidence tending to prove that the injuries were received through their gross or wanton negligence. This instruction was refused, and counsel contend that such refusal was reversible error. Whether a personal injury has been inflicted by gross or wanton negligence is a question of fact to be determined by the jury. (*Illinois Central Railroad Co.* v. *Leiner,* 202 Ill. 624; *Chicago, Burlington and Quincy Railroad Co.* v. *Murowski,* 179 id. 77.) It is not always easy to state what degree of negligence the law considers equivalent to wanton or gross negligence. The character of an act as being wanton or gross is greatly dependent upon the circumstances of each case. To constitute willful and wanton negligence it is not always necessary to prove that the defendant was actuated by ill-will toward the plaintiff. An entire absence of care for the life, person or property of others, if such as exhibits indifference to consequences, makes a case of constructive or legal willfulness, such as charges a person whose duty it was to exercise care with the consequences of a legal injury. 1 Thompson on Negli-

gence, sec. 22; *Neice* v. *Chicago and Alton Railroad Co.*
254 Ill. 595; *Chicago Terminal Railroad Co.* v. *Kotoski*;
199 id. 383; *Illinois Central Railroad Co.* v. *Leiner, supra.*

One of the witnesses testified that the team was not
walking or trotting but running; that the lines were not
tight, as if the driver were trying to hold back the horses
before and at the time of the accident. Another testified
that the team was running even after the wagon ran over
the girl; that he saw sparks where the feet of the horses
struck the cobblestones between the railroad tracks. An-
other, that they were running as fast as a team generally
runs,—a good, lively team. Another, that the horses were
running fast when they struck and knocked down the girl;
that the witness did not see the driver try to stop the
horses. Another, that he only saw the team when they
were about a foot from the girl, and that when the horses
and wagon went over her they were going fast. Two wit-
nesses beside the driver testified that the horses were going
slow before the accident and were frightened by the girl
being thrown against the off horse. Neither of these two
witnesses attempted to recognize the man who they claimed
ran into the girl,—one stating that he disappeared in a
near-by alley at once after the occurrence. This court has
said that it is incumbent upon those in control of street
cars to exercise a greater degree of care and watchful-
ness at street crossings or intersections than at other places
along the route; that while drivers, grip-men or motormen
are obliged at all times to exercise reasonable care in the
conduct of their cars, the requirement of reasonable care
imposes upon them a more exacting attention when they
approach street crossings in a crowded city. (*Chicago City
Railway Co.* v. *Tuohy,* 196 Ill. 410, and cases cited; *Chi-
cago City Railway Co.* v. *Fennimore,* 199 id. 9.) In the
last case cited it was held that although there was no or-
dinance or statute limiting the speed at which street cars
were allowed to run, yet in each case it was a question for

the jury whether, under the facts and circumstances of the particular case, the rate of speed was or was not dangerous; that a railroad company, in the running of its trains, is always required to use ordinary care and prudence to guard against injury to the persons or property of those who may be rightfully traveling upon the public streets. In *Chicago and Joliet Electric Railway Co.* v. *Wanic,* 230 Ill. 530, we approved that holding and extended it to electric lines running in highways. The same rule of care necessarily applies to the drivers of wagons on the public streets of a city. They must exercise a higher degree of care in approaching a street crossing in a busy city, where pedestrians are always expected, than is required of them on a street between the street crossings, or on streets or highways in thinly populated districts, used by only a comparatively few pedestrians. In *United Breweries Co.* v. *O'Donnell,* 221 Ill. 334, the judgment of the trial and Appellate Courts was affirmed holding defendant liable for gross negligence, where the facts showed that a boy eight years of age was run over and killed by the defendant's team and wagon. The evidence was conflicting. That for the plaintiff was to the effect that the team was being driven at a high rate of speed, and that the deceased, in trying to cross the street, was struck by the pole of the wagon, knocked down, run over and killed. On behalf of the defendant the evidence tended to show that as the wagon passed four boys who were walking in the same direction on the side of the street, (among them being the deceased and a brother of the driver,) the brother asked the driver if he was going to their sister's house. The driver replied that he was, and stopped the team. The brother thereupon ran around the end of the wagon and climbed on it. The driver started the team and had proceeded but a few feet when the deceased was run over, the driver not knowing it.

If there had been no evidence in this case tending to show gross negligence or wanton or reckless driving on the

part of the servant of plaintiffs in error, then it would have been proper to have given the instruction in question, as was held by this court in *Feitl* v. *Chicago City Railway Co.* 211 Ill. 279; but here the evidence on the part of the plaintiff tended strongly to show that the driver of a heavy team and wagon was driving at such a reckless rate of speed up to and across a busy street crossing in a thickly populated district that he was not able to stop the team after he had struck and run over the girl until he was forty feet or more beyond the place of the accident. Even though there was evidence in conflict with this, it was proper to submit the issue of willful negligence as a question of fact to the jury for decision.

Counsel for plaintiffs in error also contend that the conduct of defendant in error at the time of the accident was such as to make her guilty of contributory negligence as a matter of law; that therefore there could be no recovery, and that an instruction asked by them to that effect should have been given. They argue that the approach of the team was plainly visible; that the slightest glance would have disclosed to her their presence; that a heavy wagon and rapidly moving horses would make considerable noise, especially on a cobblestone pavement; that she was not engaged in any absorbing enterprise that would make her oblivious to her surroundings; that the only rational explanation of her failure to discover the wagon is, that the accident did not take place under such circumstances as testified to by her; that it was obvious that she neither looked nor listened. They cite in support of this contention numerous cases from other States, in which, they argue, on very similar facts the courts in those jurisdictions have held children no older than this girl was at the time of the accident, guilty of contributory negligence and that no recovery could be had. They also argue most earnestly that in the early cases in this State it was held that the failure to take precautions in crossing a place of known danger con-

stituted negligence barring a recovery; that later it was held that the mere failure to discover danger might not always be negligence, and that when there were circumstances or conditions excusing the failure it was a question for the jury to say whether the person injured exercised due care. They insist that everybody knows that this rule "has led to gross abuse. The relinquishment by the courts to juries of the function of passing on the effect of conduct has greatly undermined the law of contributory negligence; that undermining the law of contributory negligence has markedly weakened the public security; that all philosophical writers declare that the only way to promote the public safety is to require from each individual the exercise of reasonable care for his own safety. If the law of contributory negligence was properly enforced everyone would realize that he must exercise individual care for his own safety. The exercise of such care would prevent the great majority of accidents occurring on the streets of large cities. The most progressive and intelligent courts are therefore abandoning the idea of leaving the question to the jury in every case." This argument practically concedes that under the decisions of this court defendant in error was not necessarily guilty of contributory negligence on the facts shown on this record. Of course, the decisions in other jurisdictions, even if those cited be conceded, for the sake of the argument, to be in conflict with the holdings of this court, can only be persuasive in this court. We are bound to follow our own decisions, rather than those of other courts, unless convinced that they are wrong and should be overruled. We have said that it is our duty "to enforce the law as we find it, unless considerations of a very controlling character were presented which would justify us in overruling the previous decisions of this court and again laying the foundations of law anew." (*Chicago Union Trac. Co.* v. *Jerka, 227* Ill. 95.) Stability and uniformity of decisions conduce so much to the public welfare

and happiness, that when a rule of law has once been settled, contravening no statute or constitutional principles, such rule ought to be followed unless it can be shown that serious detriment is thereby likely to arise prejudicial to public interests. (*Koch* v. *Sheppard,* 223 Ill. 172.) It has long been the settled rule in this jurisdiction that "it cannot be said, as a matter of law, that a person is in fault in failing to look and listen if misled without his fault or where the surroundings may excuse such failure." (*Chicago and Alton Railroad Co.* v. *Pearson,* 184 Ill. 386, and cases cited.) To the same effect are *Chicago and Eastern Illinois Railroad Co.* v. *Schmitz,* 211 Ill. 446; *Chicago and Joliet Electric Railway Co.* v. *Wanic, supra; Winn* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 239 Ill. 132; *Henry* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 236 id. 219. We see no reason why this long established rule of law should be changed. This was a busy street corner in one of the most populous sections of the city of Chicago, both streets having street car tracks on them. The evidence shows that there were people there waiting to take the cars or cross the streets. There was also a band of music stationed near these corners, at the entrance to a theater, playing just before the accident. The accident took place at seven o'clock in the evening. Whether in such surroundings defendant in error took proper care to look to see if teams were approaching, on the evidence in this record was a question of fact to be submitted to the jury. Under facts quite similar to this the court has sustained verdicts in the following cases: *Star Brewery Co.* v. *Hauck,* 222 Ill. 348; *United Breweries Co.* v. *O'Donnell, supra; McGuire* v. *Guthmann Transfer Co.* 234 Ill. 125; *Heldmaier* v. *Rehor,* 188 id. 458; *United States Brewing Co.* v. *Stoltenberg,* 211 id. 531. It is true that in some of these cases a municipal ordinance was introduced limiting the rate of speed, but, as already stated, regardless of ordinance or statute limiting the speed, it is always a question

for the jury to decide whether, under the facts and circumstances, the rate of speed was or was not dangerous or unreasonable. Ordinarily contributory negligence is a question of fact for the jury, and only becomes one of law where the undisputed evidence establishes that the accident resulted from the negligence of the injured party. If there may be a difference of opinion on the question, so that reasonable minds will arrive at different conclusions, then it is a question of fact for the jury. (*Chicago City Railway Co.* v. *Nelson,* 215 Ill. 436; *Chicago and Joliet Electric Railway Co.* v. *Wanic, supra.*) The evidence here, it is true, is conflicting, but that did not any the less require the submission of the case to the jury on the question of contributory negligence of the defendant in error. The fact that some of the witnesses for defendant in error had signed written statements a few days after the accident, prepared for them by a detective agency apparently in the employ of plaintiffs in error, which statements in some particulars were not in harmony with their testimony, would not on this record justify the court in giving the instruction requested as to contributory negligence of defendant in error. Furthermore, the review of the evidence already given tends to show that plaintiffs in error were guilty of willful and gross negligence. When the record discloses such evidence, negligence on the part of the defendant in error, if conceded, would not excuse plaintiffs in error. *Illinois Central Railroad Co.* v. *Leiner, supra; Lake Shore and Michigan Southern Railway Co.* v. *Bodemer,* 139 Ill. 596; *Wabash Railroad Co.* v. *Speer,* 156 id. 244.

Counsel for plaintiffs in error have argued this case at great length, with a very exhaustive review of many authorities. We have given the questions at issue such consideration as their importance required. We find no reversible error in the record.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*