## CONRAD v. WHEELOCK et al.

District Court, S. D. Illinois, S. D. January 21, 1928.

No. 17880.

**1. Trial ⚖169—Insufficiency of count, not tested on demurrer, cannot be challenged on motion for peremptory instruction at close of evidence.**

In death action against railroad, it is too late on motion for a peremptory instruction at close of all the evidence, to contend that count charging willful negligence in declaration is insufficient, where its insufficiency was not tested on demurrer.

**2. Pleading ⚖245(4)—In death action against railroad, plaintiff may correct technical insufficiencies of count charging willful negligence by amendment, where evidence shows defendants guilty of willful negligence.**

Where evidence in death action against railroad receivers discloses that defendants are guilty of willful negligence causing injury, plaintiff will be permitted, by amendment, to correct technical insufficiencies of count charging willful negligence.

**3. Railroads ⚖348(11)—In action against railroad for death at crossing, evidence held insufficient to sustain charge of "willful or wanton injury."**

In action against railroad for death of motorist at crossing, evidence held insufficient to sustain charge of willful injury; "willful or wanton injury" being one which is intentional or in which there was failure after knowledge of impending danger to exercise ordinary care to prevent it, or failure to discover danger through recklessness or carelessness.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Willful and Wanton.]

**4. Courts ⚖359—Federal courts apply federal rule as to substantive law, where differing from state law.**

In actions at law, federal courts follow practice of courts of state in which federal court is sitting, except in so far as it may be modified by federal law, but, where substantive law in federal jurisprudence differs from that of state, federal rule must be applied.

**5. Courts ⚖352(5)—Federal court must direct verdict, where evidence is undisputed or so conclusive as to require court to set aside contrary verdict.**

Under federal rule, court must direct verdict where evidence is undisputed or so conclusive that court would be compelled to set aside verdict in opposition to it; rule being different from that in Illinois state courts, in which any competent evidence will take case to jury.

**6. Courts ⚖347(11)—In death action against railroad, brought in federal court, contributory negligence must be pleaded and proved by defendant.**

In death action against railroad, plaintiff in federal court need not negative in his declaration possibility of contributory negligence, since it is defense which must be pleaded and proved

by defendant; rule being different than in state courts of Illinois.

**7. Railroads ⬟335(1)—Intestate's contributory negligence will bar recovery from railroad in death action.**

Plaintiff cannot recover in death action against railroad, if intestate was guilty of any negligence contributing to injury, and in such case it is immaterial whether railroad was negligent.

**8. Railroads ⬟324(1)—One going onto railroad crossing must exercise care which ordinarily prudent person would exercise under like circumstances.**

When person goes into place of danger known by him to be dangerous place, such as railroad crossing, he must exercise care for his own safety commensurate with dangers and incidental perils he encounters in entering place, and must exercise that degree of care which ordinarily prudent person would exercise under like circumstances.

**9. Railroads ⬟327(1)—Motorist having clear view of railroad track held guilty of contributory negligence, barring recovery for death at crossing.**

In action against railroad for death of motorist at crossing on street of village, plaintiff's intestate *held* as matter of law guilty of contributory negligence, where he had clear view of track and applied brakes when 40 feet from track, within which distance he could have stopped unless he released brakes again.

At Law. Action by Nelle V. Conrad, administratrix of the estate of Grover Lloyd Conrad, deceased, against William G. Wheelock and another, receivers of the Chicago & Alton Railroad Company. On motion by defendants at the close of all the evidence for an instructed verdict. Motion granted.

Plaintiff sued in the circuit court of Sangamon county, Ill., to recover damages for the alleged negligent killing of plaintiff's intestate at Williamsville, Ill., on the 15th day of May, 1926, and the cause was removed to this court upon the petition of the receivers; upon the removal, defendants were granted leave to file a special plea to the several counts in the declaration, alleging that plaintiff's intestate was guilty of negligence which contributed to the injury which resulted in his death. There were several counts in the declaration, charging, respectively, that the defendant's train, passing south through Williamsville, was running at a high and dangerous rate of speed, to wit, 65 miles an hour; that the crossing signal bell was defective and inoperative, and did not warn plaintiff's intestate of the approach of defendant's train; that defendants did not ring a bell or sound a whistle as required by law upon approaching the crossing in question; and that the defendants willfully and wantonly injured and killed plaintiff's intestate.

Williamsville is a small way station in the northern part of Sangamon county, about 13 miles northeast of Springfield, and has a population of between six and seven hundred persons. The main street of the village runs east and west, and the tracks of the Chicago & Alton Railroad run southwesterly and northeasterly through the village; however, at the point where defendants' tracks cross Main street of the village they run almost north and south. A few hundred feet north of Main street there is a slight curve to the east, where the defendants', tracks then take a direct northeasterly course from the end of the curve to the village of Elkhart, several miles away. Defendants' railroad is a double main track system. The westerly track is what is known as the south-bound main, and the easterly track, the north-bound main. Main street is a wide, spacious street, unpaved; and, while there are switch tracks adjacent to the main tracks on the east, there is no side track west of the south-bound main track. About 125 or 150 feet west of the south-bound main track is a north and south street, crossing Main street, in which is located the concrete slab of state highway route No. 4.

Upon the day in question, plaintiff's intestate, riding in a closed Chevrolet automobile, came to the main street of the village from the north, on the concrete slab, turned east while going at a considerable rate of speed, and, when he reached a point between 40 and 45 feet west of the west rail of the south-bound track, he and a companion riding with him were laughing, and plaintiff's intestate was leaning over as though reaching for the emergency brake lever. Persons in the barber shop on the north side of the street and in the store adjoining the barber shop, as well as others who were in the vicinity, heard the squeak of the automobile brakes of the car in which plaintiff's intestate was riding. A few moments later the south-bound Alton Limited, traveling upon the south-bound track, came through the village and struck the automobile in which plaintiff's intestate and his companion were riding, killing both occupants.

Just north of the north line of Main street was a standard upon the top of which was installed an ordinary automatic electric signal bell. Several witnesses called in behalf of the plaintiff testified they did not hear the bell ringing. However, several other witnesses said positively that the signal bell was ringing at the time of the accident. The

company employee in charge of the signal bell testified that the bell was in an operative condition; that it had been tested a few days prior to the accident as well as immediately thereafter, and that he found it to be operating properly upon both occasions. It was a clear day, and, from a point 40 or 45 feet west of the westerly rail of the south-bound main track, the line of vision up defendants' tracks to the north and northeast was unobstructed for many miles—as one witness put it, "all the way to Elkhart." The slight curve to the east a few hundred feet north of the Main street crossing was an aid to the view from the point above mentioned, rather than an obstruction. The train which struck plaintiff's intestate was the regular south-bound Alton Limited, due to pass through Williamsville at about 3:15 p. m.; it was a minute or two late. The rate of speed at which it approached the crossing was estimated variously from 40 to 60 miles per hour. The locomotive was equipped with an automatic bell. The engineer, Donnelly, died between the date of the accident and the time of the trial. The fireman, however, testified that, when the engine was coupled onto the train at Bloomington and started south with it, that the automatic bell was put into operation; that the bell continued to ring all the way to Williamsville, about 45 miles, and was not shut off until after the accident. He also testified that all of the usual crossing whistles were sounded between Elkhart and Williamsville, and particularly the whistle for the Williamsville station. As the train approached Main street, Engineer Donnelly was sounding the whistle. When he saw the apparent possibility of an accident, he released the whistle and made an emergency application of the air brakes. The train went its entire length across the street crossing and 50 or 75 feet south of the intersection before it came to a full stop. One witness, a garage man, testified that on the day before the accident he had overhauled the car in which deceased was riding at the time of the accident, and said that the brakes and the brake-operating mechanism were in good condition. A salesman for the type of car in question said that such a car, going at the rate of 10 to 15 miles per hour, could have been stopped within 12½ feet.

At the conclusion of all of the evidence, defendants moved to instruct the jury to find the defendants not guilty. The motion was argued, and, in allowing the motion, the court delivered the following opinion.

O. J. Putting and W. A. Ruegg, both of Springfield, Ill., for plaintiff.

Wm. L. Patton, of Springfield, Ill., for defendants.

FITZHENRY, District Judge. Defendants' motion, at the close of all of the evidence, for a peremptory instruction to the jury to find the defendants not guilty, raises two material questions: (1) Whether the defendants willfully injured plaintiff's intestate, causing his death; and (2) if the injury was not the result of willful negligence on the part of defendants or their servants, then was plaintiff's intestate guilty of contributory negligence just before and at the time of the injury?

[1, 2] It is too late now to contend that the count charging willful negligence, in plaintiff's declaration, is insufficient, inasmuch as its insufficiency was not tested upon demurrer. If the evidence disclosed that the defendants were guilty of willful negligence, causing the injury, plaintiff would be permitted to correct the technical insufficiencies of the count by amendment.

[3] In Brown v. Illinois Terminal Co., 319 Ill. 326, 150 N. E. 242, cited by counsel for plaintiff, the court had occasion to discuss the rule in Illinois as to wanton and willful injury. While, of course, the facts are altogether different from those here, the discussion of the Illinois Supreme Court is interesting:

"Willful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of the impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. Lake Shore & Michigan Southern Railway Co. v. Bodemer, 139 Ill. 596 [29 N. E. 692, 32 Am. St. Rep. 218]; Heidenreich v. Bremner, 260 Ill. 439 [103 N. E. 275]; Illinois Central Railroad Co. v. Leiner, 202 Ill. 624 [67 N. E. 398, 95 Am. St. Rep. 266]. A willful or wanton injury must have been intentional."

I do not believe there is any possible deduction that can be made from the facts established by the evidence in the case at bar that the receivers or their servants deliberately intended to injure and kill plaintiff's intestate. So that phase is entirely out of the case. There is not the slightest testimony to sustain such a proposition.

It must have been intentional, "or the act must have been committed under circumstances exhibiting a reckless disregard for

the safety of others, such as a failure," and not only a failure, but "after knowledge of the impending danger to exercise ordinary care to prevent it." In other words, if the engineer here saw and knew the impending danger and the peril in which plaintiff's intestate was situated, just before and at the time of the injury, and then failed to exercise ordinary care to avoid the injury that killed him, that might have been within the rule.

The operation of the rule, "after knowledge of the impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care," is entitled to consideration.

If Engineer Donnelly, through recklessness or carelessness, failed to acquaint himself with the peril in which the deceased was situated at the time, and did not use ordinary care to avoid it, it might have been willful negligence under the rule announced by the Illinois Supreme Court. But, when the established facts in this case are considered, much is lacking to bring it within the rule announced in Brown v. Illinois Terminal Co., supra, and which is sustained by the great weight of authority.

The court is of the opinion that the evidence in this case is insufficient to sustain a charge of willful injury, even though plaintiff's willful count had been in form.

[4, 5] On the question of contributory negligence, there has been some discussion by counsel about the conformity rule. By reason of the statute, in actions at law, the courts of the United States follow the practice of the courts of the state in which the federal court is sitting, except in so far as it may be modified by the federal law. Practice or procedure, however, is one thing, and substantive law is another. Where the substantive law in federal jurisprudence differs from that of the state in which the court is sitting, then, of course, the federal rule must be applied. It has long been the rule in Illinois that, if there is any competent evidence tending to sustain the contention of the plaintiff, then it is the duty of the court to submit the cause to the jury. The federal rule is different. Where the evidence is undisputed, or is so conclusive that the court in the exercise of a sound judicial discretion would be compelled to set aside a verdict in opposition to it, then it is the duty of the court to direct a verdict. Southern Pacific Co. v. Pool, 160 U. S. 428, 16 S. Ct. 338, 40 L. Ed. 485.

[6] The distinction between rules of practice as controlled by the Conformity Act (28 USCA §§ 724, 726, 727; Comp. St. §§ 1537, 1539, 1540), and the application of the rules of substantive law, is well illustrated in negligence cases. Under the Illinois law, the plaintiff in a case of this character cannot recover unless he charges and proves that his injury was the natural and proximate result of the negligence of the defendant and that the plaintiff himself, or his intestate, was in the exercise of ordinary care for his own safety just before and at the time of the injury. In other words, he must not only show that the defendant was negligent as charged, but the burden is upon him to prove that he was guilty of no negligence contributing to the injury.

In the federal jurisdiction, the plaintiff need not negative, in his declaration, the possibility of contributory negligence, as it is a defense which must be pleaded and proved by the defendant. The defense of contributory negligence has been interposed here.

[7] The rule is thoroughly established that, if plaintiff's intestate was guilty of any negligence contributing to the injury, then there can be no recovery, and it does not make any difference if the railroad was negligent. It may be considered a harsh rule, but it is the law, that plaintiff's intestate, in order to sustain a recovery, must have been guilty of no negligence contributing to the injury.

Much has been said in argument at the bar about the recent decision of the United States Supreme Court in B. & O. R. R. Co. v. Goodman, Adm'x, etc., 48 S. Ct. 24, 72 L. Ed. ——, in which the opinion was filed October 31, 1927. That was a case very similar to this one. There defendant, in the trial court, made its motion for a directed verdict, which was denied. The jury returned a verdict for the plaintiff, upon which judgment was rendered; the judgment was affirmed by the Court of Appeals for the Sixth Circuit. 10 F.(2d) 58. The Supreme Court reversed the judgment.

[8] I do not understand that the Supreme Court of the United States laid down any new rules in the Goodman Case. It does not reverse, or modify, or change, in any respect, the substantial rules in negligence cases of the character there disposed of by the court. But it does this: It admonishes the Circuit Courts of Appeal and the United States District Courts that it is their duty to apply the law in cases of this character. It has long been the law that, when a person goes into a place of danger, known by him to be a dangerous place, he must exercise

care for his own safety commensurate with the dangers and incidental perils he encounters in entering the place; he must exercise that degree of care which an ordinarily prudent person would exercise under like circumstances.

A railroad crossing, even in the great open spaces, is a dangerous place. A railroad crossing, where it crosses one of the main highways or streets of a city or village, is a dangerous place. This was a dangerous place—the place where this accident happened. It might have been avoided, of course, if the engineer in charge of this locomotive and train had seen plaintiff's intestate and known and appreciated the peril in which he was situated in time to have stopped the train. But, on the other hand, if the engineer saw the plaintiff's intestate when the latter was about 40 or 45 feet from the track, he had a right to presume that plaintiff's intestate would not go upon the tracks and suffer injuries to himself which might cause his death, because that is the course of conduct that an ordinarily prudent person would exercise under similar circumstances. And yet, when plaintiff's intestate approached the crossing at the time in question, he must have known, from the evidence in this case, that ordinarily it was a dangerous crossing. He lived in Williamsville, had his place of business close to the crossing where this accident happened, and knew that the big, fast trains of the Alton Railroad ran through the village. He knew as well as anybody could know that, if he got on the tracks and one of those trains was due or coming, he might be struck and hurt.

It was a clear day. Plaintiff's intestate was proceeding in an easterly direction. When he was within 40 or 45 feet west of defendants' south-bound track, he could see, if he had looked, up the railroad for miles. North of the village there was a slight curve in the railroad track to the east. This gave a wider range to the vision of plaintiff's intestate from that point.

[9] The court feels that there can be no question from this evidence, and the facts are practically undisputed, that plaintiff's intestate was guilty of negligence which contributed to his injury and death. This conclusion is inescapable. Just what he thought there, of course, will always be unknown. The evidence does show that, when he was more than 40 feet west of the south-bound main track upon which this train was traveling, upon the day in question, he must have known the train was coming. He attempted to slow down the speed of his automobile, and, unless he was going at a rate of speed very much greater than has been testified to by any of the witnesses, he should have been able to stop his car before he reached the track. While, of course, there is no direct evidence upon which to base it, the conclusion might be drawn from the circumstances that, when the deceased was within 40 or 45 feet of the track, he saw the train, thought he could get across, and started, and, of course, he erred in his calculation.

This explanation as to what might have happened would explain the fact that he applied the brakes to the extent that witnesses heard them squeak when he was about 40 feet or more from the track, and yet he was struck. This is the only reasonable explanation that can be made, because, unless the facts of the speed of the car are out of all proportion to the estimates of the witnesses, he would not have been struck if he had applied his brakes and did not release them. There were two witnesses who testified they heard his brakes squeak. The young man in the restaurant said he saw the occupants of the car laughing, and saw the deceased lean over as though he were pulling up the emergency brake. When at that point, in front of the restaurant, deceased was applying the emergency brake incidental to stopping, he looked up, saw the train, and thought, "Well, I can get across," tried to beat the train, and failed. This is a possible explanation of what happened at this crossing.

The accident was most unfortunate, but this is a lawsuit; it is governed by the rules of law. Judges sitting upon the bench find no pleasure in denying a widow a recovery in a case of this character. It is easy to deny a motion for a directed verdict and let the jury pass upon the facts, and then more or less embarrassing to have to set aside the verdict. Expenses and inconvenience accumulate, and yet eventually any judgment based on such facts as appear here must be reversed. The Goodman Case, supra, was just such a case. The opinion in that case was a clear admonition by the Supreme Court to trial courts to apply the law.

The motion will be allowed, and the jury instructed to find the defendants not guilty.