Frank J. Killilay, Defendant in Error, v. William Hawk, Plaintiff in Error.

Gen. No. 32,472.

Opinion filed October 11, 1928.

JOHN E. KEHOE, for plaintiff in error.

JOSEPH D. RYAN, for defendant in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

It is sought by this writ of error to reverse a judgment of $15,000, entered against defendant on April 30, 1927, in an action for damages for personal injuries received by plaintiff in an automobile accident on August 30, 1925, on Central Avenue near its intersection with Eighty-fifth Street, . Cook county, Illinois. The jury returned a verdict in plaintiff's favor for $20,000, but, upon the court's demand, plaintiff remitted $5,000, and the judgment for $15,000 followed.

Plaintiff's declaration consisted of five counts, to which defendant filed a plea of the general issue. During the trial the fourth and fifth counts were withdrawn, and the case was submitted to the jury on the remaining counts. The first count averred in substance that on the day mentioned plaintiff was driving his automobile southward along and upon Central Avenue, a public highway; that defendant was driving his automobile in the same direction behind plaintiff's and endeavoring to pass it; and that, while plaintiff was exercising due care, etc., defendant so carelessly and negligently drove his automobile "toward and past plaintiff's * * * and in such close and dangerous proximity thereto" that, in consequence thereof, "plaintiff's automobile was, then and there, overturned upon and into a certain ditch," whereby plaintiff suffered serious and permanent injuries, etc. The second count charged that, while

plaintiff was in the exercise of due care, etc., defendant so carelessly and negligently drove his automobile toward, alongside of and past plaintiff's that, in consequence thereof, defendant's automobile "was caused to and did then and there run upon and against and strike plaintiff's automobile," which was overturned, etc. The third count charged that defendant, not regarding his duty and "with a conscious indifference to surrounding circumstances and conditions," so wilfully and wantonly drove and managed his automobile along and upon said highway "up to, toward and past" plaintiff's automobile, and "upon and against plaintiff's automobile with great force and violence," that, in consequence thereof, plaintiff's automobile was crowded from the highway and overturned in the ditch.

On the trial plaintiff and his brother-in-law, George Hahn, a passenger in plaintiff's car, testified as to the details of the accident. Defendant and three young women, who were in his car, testified as witnesses for him. The accident happened on a Sunday morning, about 11:30 o'clock. The weather was good and the road dry. Between Eighty-fourth and Eighty-fifth Streets, the center portion of Central Avenue, for a width of about 12 or 14 feet, was a hard roadway, on each side of which for a width of 5 or 6 feet there was loose crushed stone and gravel. Beyond this loose material, on each side, were ditches, paralleling the highway. Plaintiff was driving his car south in Central Avenue, in the center of the hard portion of the road, at a speed of about 25 miles per hour. Shortly after passing Eighty-fourth Street, he heard the honk of an automobile horn behind him, and, turning his car slightly to the right, he proceeded south at about the same speed on the extreme west side of the hard portion of the road for a distance of 100 or 200 feet, but not so that any wheels were running in the loose stone

and gravel. Defendant continuing to sound his horn, plaintiff so moved his car at a diminished speed that its right wheels travelled south in the loose stone and gravel, about a foot or two west of the hard portion of the road. Defendant's car then proceeded to pass plaintiff's car to the left, going at a speed of about 35 miles per hour. Before it had passed completely, it turned sharply to the right and cut in front of plaintiff's car, with the result that plaintiff's car went into the ditch and was overturned. The testimony was conflicting as to whether defendant's car hit any portion of plaintiff's car. On direct examination plaintiff testified: "When he got over half by me, he cut right in front of me, cut me right off the road. He hit the front of my car and throwed the front of it toward the ditch, and I turned over. I cannot tell what part of his car came in contact with me, it was too quick." On cross-examination he testified: "I can't say that I saw * * * any part of my car get struck. I felt a jar. I felt it scrape. * * * I remember my steering wheel partly slipping out of my hand and me grabbing for it. * * * At the time the steering wheel got out of my hands, * * * all four of my wheels were on the road, but the right-hand wheels were in the soft gravel." On re-direct examination he testified: "This car cut in front of me and the jar of the bump knocked the wheel out of my hands." Hahn, plaintiff's witness, testified: "When we first turned to the right there was enough space left on the hard road for another car to pass. I saw this other car just as it went past. When it passed it seemed like it came right in front of us. It turned to the right. * * * I felt a jar—I couldn't say just the part it hit * * *. At the time I felt the jar we were going straight and the other car turned right in a right angle. * * * After it turned we did not go over 15 feet before we were overturned."

Defendant's testimony was to the effect that when he passed plaintiff's car there was at all times a space of not less than 3 feet between the cars; that he did not turn his car shortly to the right in front of plaintiff, and that he had no knowledge of anything having happened to plaintiff's car until one of the young women, riding in his car, made some exclamation and he looked back, at which time he was approximately 400 feet south of where plaintiff's car went into the ditch. He admitted on cross-examination that the right front fender of his car was bent down after the accident, but he claimed that this had been caused early in August, 1925, several weeks before the accident, by his wife's careless driving of the car while attempting to enter a garage. All three of the young women gave testimony, corroborative of defendant's, to the effect that when their car passed plaintiff's there was a space of about 3 feet between the two cars and that their car did not at any time strike plaintiff's car. In December, 1925, more than a year prior to the trial, a representative of plaintiff took the signed statements of the three women. These statements, introduced in evidence by plaintiff, were at variance in material particulars to their testimony given on the stand, and tended to impeach their credibility as witnesses. The testimony of plaintiff, Hahn, and Mrs. Emma Schwartz further disclosed that on the afternoon of the day of the accident defendant called on plaintiff at the hospital and stated in substance that he was very sorry he had hit him, and that he didn't intend "to cut him off like that."

Plaintiff remained in the hospital, confined in bed, for more than a month and continuously suffered much pain. X-ray pictures were taken and the attending physician discovered that the seventh cervical vertebra was driven back more than half an inch. Plaintiff was placed under an anaesthetic and given treatments.

During the month of October, 1925, after he returned home, he was in bed much of the time and continued to suffer pain. He went back to work in December, 1925, with his former employer, but found he could not work as he formerly did on account of the condition of his neck and back and that he tired easily. He lost more than 20 pounds in weight, which he had not regained at the time of the trial. Neither prior to the accident nor since had plaintiff suffered any other serious injuries or serious illness. There was evidence of serious permanent injuries caused by the accident. Certain X-ray pictures of plaintiff's neck and spine were introduced in evidence by him and commented upon by physicians. Two were taken during September, 1925, three on April 11, 1927, and two on April 18, 1927. One picture taken in September, 1925, in addition to showing the dislocation of the seventh cervical vertebra, disclosed an abnormality in the sixth cervical vertebra. One of the pictures taken in April, 1927, showed callouses of the sixth lamina and the sixth process, and also that the seventh cervical vertebra was still out of alignment. Dr. Walter R. Schussler, a surgeon of wide experience and connected with several hospitals and called as plaintiff's witness, testified to the effect that an act of violence sufficiently severe to cause a dislocation of the seventh cervical vertebra backward for more than half an inch, together with the fracturing of the sixth lamina and process, would necessarily result in the tearing of muscles, ligaments and nerves, and that the dislocated condition of said vertebra and surrounding structure in April, 1927, was permanent. No medical testimony as to plaintiff's condition was introduced by defendant.

We are unable to agree with the contention of defendant's counsel that the verdict is against the manifest weight of the evidence on the question of defendant's negligence in so driving his car as to strike plaintiff's car and force it into the ditch, where

it was overturned. Nor can we agree with counsel's further contention, that the evidence disclosed that at the time and immediately before plaintiff's car went into the ditch plaintiff was guilty of such contributory negligence as bars a recovery by him. Furthermore, under all the facts and circumstances disclosed, we think that the court was fully justified in refusing to instruct the jury, as requested by defendant, to find him not guilty as to the third (wilful and wanton) count. There was sufficient evidence to go to the jury on the question whether defendant, in driving his car in the manner he did, was guilty of wilful and wanton conduct. In *Heidenreich v. Bremner*, 260 Ill. 439, 446, it is said: "Whether a personal injury has been inflicted by gross or wanton negligence is a question of fact to be determined by the jury. * * * It is not always easy to state what degree of negligence the law considers equivalent to wanton or gross negligence. The character of an act as being wanton or gross is greatly dependent upon the circumstances of each case. * * * An entire absence of care for the life, person, or property of others, if such as exhibits indifference to consequences, makes a case of constructive or legal willfulness, such as charges a person whose duty it was to exercise care with the consequences of a legal injury." In *Brown v. Illinois Terminal Co.*, 319 Ill. 326, 331, it is said: "A willful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of the impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." In *Mueller v. Dewey*, 159 Minn. 173, 176, it is said: "To cut in ahead of another car in passing and crowd it off the road is sheer reck-

lessness. One guilty of such conduct is not in a position to complain if a jury finds that he was wantonly indifferent to the safety of the occupants of the car he passed. His act put them in peril of injury.''

Counsel also contend that the court erred in admitting in evidence, over objection, the five X-ray pictures of plaintiff's spine, taken in April, 1927, and also in allowing Dr. Schussler to answer, over objection, a certain hypothetical question put to him. We have carefully considered these contentions, and the arguments of respective counsel pertaining thereto, and are of the opinion that no reversible error was committed by the court in either of the rulings. And we are unable to say, as further urged by counsel, that the verdict, as remitted, is excessive, or that the verdict of $20,000, as originally returned by the jury, indicates such passion and prejudice on their part as requires a new trial of the case.

Complaint is made of the giving of certain instructions offered by plaintiff, and of the refusal to give certain other instructions offered by defendant. We have considered these instructions, in connection with all given instructions, and are of the opinion that no reversible error was committed by the court in any of the particulars mentioned. We think that the jury were fully and fairly instructed.

Finding no reversible error in the record the judgment of the superior court is affirmed.

. *Affirmed.*

SCANLAN and BARNES, JJ., concur.