## GRAF v. HOLCOMBE.*

(Circuit Court of Appeals, Eighth Circuit. December 21, 1921.)

No. 5759.

1. **Trial ⬅48—Written statement held admissible, though containing inadmissible matter.**

   In an action by one who exchanged a tract of land for various parcels of defendant's land, for damages for false representations, a typewritten list of defendant's property furnished by him at the time of the trade was admissible in evidence as far as it described defendant's property, even though it included figures representing values that were incompetent, and proper procedure was to admit the paper, with proper instructions.

2. **Appeal and error ⬅930(2)—Presumed that jurors disregarded evidence as directed.**

   The legal presumption is that the jury followed instruction to disregard evidence which had been erroneously received, or had after its receipt become immaterial in the progress of the cause, except in unusual cases, where to indulge such presumption would permit injustice.

3. **Evidence ⬅558(1)—Cross-examination as to amount paid for land held admissible to test opinion as to value.**

   In an action for damages for false representations in exchange of land, where defendant testified as to market value of some property exchanged, and that he had bought and sold five or six pieces in the locality, plaintiff on cross-examination could ask him what he paid for one of the parcels of property exchanged, to test the weight that the jury ought to give to his testimony as an expert as to values.

4. **Exchange of property ⬅8(5)—Measure of damages for false representation.**

   The measure of damages for false representations in exchange of lands is the difference between the reasonable value of what the defrauded

---

party parted with and the reasonable value of what he received; and this is true where the defrauded party has placed a certain value upon his property, and has taken a number of parcels of defendant's property at a lump sum, without an agreement as to the value of the respective parcels.

**5. Exchange of property ⬤―8(1)—Remedies of defrauded party.**

Where an exchange of properties is induced by .fraudulent representations as to part of a number of parcels of property exchanged by one of the parties, the defrauded party has the same right to a rescission or damages as when fraudulent misrepresentations relate to all the property, and he may rescind, restore what he has received, and recover back what he has parted with, or retain what he has received and recover what he has lost, though an agreed price is. placed on the property of the defrauded party and the property of the other party collectively.

Stone, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Action at law by John O. Graf against John H. Holcombe. Judgment for plaintiff, and defendant brings error. Affirmed.

Ralph P. Wilson, of Lincoln, Neb. (Elmer J. Burkett, Henry H. Wilson, and Elmer W. Brown, all of Lincoln, Neb., on the brief), for plaintiff in error.

Clinton Brome, of Omaha, Neb., (William C. Ramsey, of Omaha, Neb., on the brief), for defendant in error.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. This is an action at law by John H. Holcombe against John O. Graf to recover damages for the latter's alleged false representations that deceived the plaintiff and induced him to sell and convey to the defendant his farm of 512 acres in Richardson county, Neb., subject to mortgages of $60,000, for $15,000 cash, a note and a mortgage of the defendant for $7,500, and seven pieces of the property of the defendant, subject to a mortgage on one of them for $1,000, recited in the contract of sale to have been of the value of $37,800, making the amount paid by the defendant in the aggregate $65,300. In his complaint the plaintiff averred that he had been induced to make the sale and convey his land to the defendant by the latter's misrepresentations of the character and value of the property which the defendant agreed to convey and did convey to him. The defendant denied these allegations of false representations, and alleged that he had been deceived and induced to convey his property to the plaintiff by the latter's false representations as to the character of the 512 acres that he conveyed to him, and asked for damages therefor. The plaintiff denied that he had made any such representations. The issues were tried for many days before a jury, which finally returned a verdict for $12,430 in favor of the plaintiff.

The defendant's first complaint of the trial is that the court erred in admitting in evidence a typewritten statement of the property of the defendant and of its value, which the latter agreed to convey and

did convey to the plaintiff. This statement was marked Exhibit 1, and it read in this way:

Exhibit 1.

Description.

| | |
|---|---:|
| New brick barn | $4,000 |
| Brick store building | 4,000 |
| One business lot | 1,000 |
| 160 acres in Loup county, Neb. | 4,800 |
| 10 acres near Omaha | 6,000 |
| 80 acres in Ray county, Mo. | 12,000 |
| 4 vacant lots in Frederick, Okl. | 2,800 |
| 6 lots with improvements, Frederick | 4,200 |
| Total | $38,800 |
| Incumbrances | 1,000 |
| Net valuation | $37,800 |

The first three pieces of property in this statement, aggregating $9,000 therein, were in Tecumseh, Neb., and are known as the Tecumseh property. The record discloses these facts relevant to the admission of this statement in evidence. Mr. Healy and Mr. Jones were real estate agents, who conducted some business for the defendant Graf. Mr. Healy telephoned the plaintiff to meet him and some one who wished to purchase Mr. Holcombe's farm at Falls City. The plaintiff went there and met Mr. Healy, Mr. Jones, and Mr. Graf. He testified that he had never seen Mr. Graf before, and to these facts:

They went into the country and examined the plaintiff's farm of 512 acres and returned to the hotel at Falls City. In this hotel, after their return they first discussed the prices and the terms of the sale. The plaintiff offered to sell his farm for $250 per acre, the defendant offered him $225, and their minds finally met on $235 per acre as the price of the farm. For this farm Mr. Graf said he would give $15,-000 in cash, assume incumbrances on the farm of $60,000, give another mortgage back for $7,000, and give some property which he had that was worth $38,800, with $1,000 incumbrance on it. Mr. Graf had the typewritten list—Exhibit 1—and was using it in showing the plaintiff the property while this conversation was going on. The plaintiff produced this exhibit after this testimony, and in answer to the question by his counsel, "What did he say about the list?" he answered:

"He said that was an accurate and correct list of this property that he owned and proposed to give me as part payment for my farm."

Thereupon the plaintiff's counsel offered the exhibit in evidence. Counsel for the defendant objected to it on the grounds that it was incompetent, irrelevant, immaterial, that no proper foundation was laid for its admission, and specifically to the figures showing the values for the same reasons. The court overruled these objections and the defendant excepted. Thereafter the plaintiff testified that Mr. Graf told him, in the conversation before the contract of sale was made, that if Mr. Holcombe made a sale of the farm it must be made on that day; that he told Mr. Graf that, in taking that scattered lot of property from Southern Oklahoma, near the Texas border, to Northern Nebraska and Omaha and Tecumseh, it would be impossible for

him to make an examination of it in the few hours he had given him; that Mr. Graf replied that, in lieu of the fact that Mr. Holcombe had not had time to make an examination of this scattered property, the list would be sufficient, that the list was a correct description of the properties, and that he would find it correct with reference to the properties and their worth; that Mr. Graf told him that the brick barn was worth $4,000, that the store building was worth $4,000, that the vacant lot was worth $1,000, that he set the value of the 80 acres in Ray county at $12,000, and that the 160 acres in Loup county was worth $4,800.

[1, 2] At the close of the trial the court withdrew from the jury all the evidence of the statements and representations made by the defendant of the value of the respective pieces of property, which were not accompanied with false representations of the character or extent thereof, and then charged them that the—

"law does not regard as a statement of fact ordinarily what is merely a statement of the value of an article, and under the circumstances here I think there is no actionable representation because of any statement that the defendant is claimed to have made as to the value of the Tecumseh property, or of the Loup county farm, or of the Ray county land, or the Oklahoma property, or any other property, that he put in."

In view of the facts which have been recited relevant to the exception to the evidence of Exhibit 1 and the testimony to the statements of the defendant of the value of the property he conveyed to the plaintiff, no prejudicial error was committed in their receipt in evidence: First, because the description of the property in Exhibit 1 was competent evidence when it was offered, and even if the figures representing values were incompetent, the admission of the exhibit could not be lawfully refused on that account, but it should have been admitted and the jury should have been instructed that the figures representing values were not competent evidence and that they should disregard them; and, second, because, by the charge of the court at the close of the trial, this was effectually done, and more clearly and impressively done than if it had been done when the exhibit was received in evidence, by as much as the charge was given when the jury's attention was naturally riveted on the words of the judge, and it was given nearer to the time of their decision of the case than was the admission of the exhibit.

The argument of counsel for the defendant that the judgment below should be reversed on account of the admission of this evidence, because its effect could not have been extracted from the minds of the jury by the charge withdrawing it, has not been overlooked. But the general rule, subject, like most rules, to exceptions in unusual cases, when to follow it would permit or inflict injustice, is, and the legal presumption is, that the jury listened to and followed the direction of the court to disregard evidence which had been erroneously received, or had, after its receipt, become immaterial in the progress of the cause, and there is nothing in this case to warrant its withdrawal from the effect of the rule and its transfer to the exception. Pennsylvania Co. v. Roy, 102 U. S. 451, 458, 26 L. Ed. 141; Hopt v. Utah, 120 U:

S. 430, 438, 7 Sup. Ct. 614, 30 L. Ed. 708; Turner v. American Security & Trust Co., 213 U. S. 257, 267, 29 Sup. Ct. 420, 53 L. Ed. 788.

[3] The second complaint of the trial is that, after Mr. Graf had testified on his direct examination by his counsel to the market value of each of the first three pieces of property listed in the exhibit, called the Tecumseh property, to the effect that they were worth in the aggregate about $7,700, he was asked on his cross-examination when and from whom he acquired this property, and answered that he obtained it perhaps a week or ten days before he dealt with the plaintiff and from the Tecumseh State Bank. He was then asked what he paid the bank for it, and his counsel objected that the question was incompetent, irrelevant, and immaterial, the objection was overruled, his counsel excepted, and the defendant answered, "$2,000." But there was no error here. The defendant had testified in chief that he had bought and sold five or six pieces of property in Johnson county, in which Tecumseh is situated, within six or seven years preceding the trial, that he knew two other buildings in Tecumseh, similar to the buildings first listed in Exhibit 1, and what they had sold for, and that he had an opinion of the market value of that building. The question and answer relative to the amount he paid were competent, because they tested the weight that the jury ought to give to his testimony as an expert as to the value of the property in Tecumseh, and because they constituted competent cross-examination.

The third and last complaint of the defendant is that the court below refused to instruct the jury, as requested by counsel for the defendant, that, as there was no competent evidence of any fraud or actionable misrepresentation concerning the Tecumseh property, they should take and reckon the value of that property in determining the amount paid to the plaintiff by the defendant for the 512 acres, and in measuring the damages to the plaintiff in this case at $9,000, and instructed them, on the other hand, that if they found from evidence submitted to them that the plaintiff had been injured by the false representations of the defendant submitted to them, he was entitled to recover the difference between the reasonable value of what he conveyed to the defendant and the reasonable value of what he received from him.

[4] The action and instruction of the court here seem to have been in strict accord with the rule established by the Supreme Court and this court—that the measure of damages in cases of this character is the difference between the reasonable value of what the defrauded party parted with and the reasonable value of what he received. Sigafus v. Porter, 179 U. S. 116, 21 Sup. Ct. 34, 45 L. Ed. 113; Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279; Rockefeller v. Merritt, 76 Fed. 909, 22 C. C. A. 608, 35 L. R. A. 633.

[5] But counsel for the defendant argue that there is this exception to this rule—that where the parties to an exchange of several pieces of property induced by fraudulent representations have agreed upon the value of one piece in the trade concerning which there was no evidence of actionable misrepresentation, the agreed value of that piece must be taken as the real value thereof in measuring the damages, and

that this case falls under this exception. In support of this contention they cite Southern Ice Co. v. Morris, 219 Fed. 551, 135 C. C. A. 319. In that case the plaintiffs priced and valued their property to the defendant at $100,000. The defendant, without questioning this price or value, obtained and exercised an option to buy it at that price for $50,000 in cash and $50,000 in corporate stock at par, by representing to the plaintiffs that that stock was in fact worth par, and the court held that the purchaser was estopped from claiming that the price and value of the seller's property was less than the $100,000 he agreed to pay for it. The decision and opinion in that case might have some weight, if the defendant Graf had accepted and agreed to pay the plaintiff's first price of $250 per acre for Mr. Holcombe's farm, and was now here asserting that it was worth much less, and that he had been fraudulently induced to purchase it at that price by the plaintiff's false representations. But it could have no relevancy or persuasive force in the case under consideration, if such an exception to the established rule of measuring damages as is claimed by counsel existed, and that because the plaintiff never agreed in making the trade here that the Tecumseh property was worth $9,000. The written contract was that the plaintiff should take in part payment for the plaintiff's farm the Tecumseh property, the 160 acres in Loup county, the 10 acres northwest of Benson, the 80 acres in Ray county, and the ten lots in Frederick, subject to an incumbrance of $1,000, at the lump sum of $37,800, and the plaintiff made no agreement as to the value of the respective pieces of property, which together made up that amount. On the other hand, the evidence was that the plaintiff was induced to make this agreement to take this property at $37,800, and was induced to make the entire contract of exchange by the fraudulent misrepresentations of the defendant of the character and extent of some of the pieces of the property other than the Tecumseh property, which he agreed to take with that property for the aggregate sum of $37,800.

Inasmuch as there were fraudulent misrepresentations as to some of this property which the plaintiff agreed to take for this amount, he was entitled to recover the difference between the sum of $37,800 and the reasonable value of the property he agreed to take at that amount, provided that amount did not exceed his loss by the trade, even if the exception to the general rule claimed by the plaintiff's counsel existed. The existence of such an established exception, however, is not conceded. In our opinion, an exchange or an agreement to exchange several pieces of property at estimated or agreed prices, made at one time and performed with convenient speed, as this was, is a single transaction. And when, as in this case, such a transaction was induced by the fraudulent representations as to some, but not as to all, the property, the defrauded party has the same right to a recission of the contract and transaction, or to damages, as when the fraudulent misrepresentations inducing the contract or transaction relate to all the property he takes or agrees to take. He has the option to rescind the contract or exchange, to restore what he has received, and recover back what he has parted with, or to retain what

he has received and recover what he has lost, to recover the difference between the reasonable value of what he parted with and what he received, whether the inducing false representations pertained to a part or to all of the property he took, and there was no error in the charge of the court on this subject.

The judgment below must therefore be affirmed, and it is so ordered.

STONE, Circuit Judge (dissenting). I am unable to agree to the affirmance of this judgment for the reason following: I understand the facts to be that the parties agreed upon the valuation of the equity in the Holcombe farm; that Graf made up this value by a cash payment, a secured note, and eight several pieces of real estate; that each of these pieces of real estate was valued by the parties, and each went in at an agreed valuation. It is true that the total value of the eight pieces was $37,800, but both parties, at the time, understood that such total was reached solely by adding the values placed upon the several tracts and subtracting therefrom an incumbrance upon one of them. The parties understood that each tract was going into the transaction at a definite value, and the deal was consummated upon that basis. Whether such values were true or accurate is immaterial, so long as the parties chose to regard them as such, and so long as neither was induced to accept any such value by the fraud of the other party. Suppose that there was no fraud as to seven pieces of the property, totaling $36,000 in the agreed valuation, but as to the vacant lots in Frederick, valued at $2,800, there was a fraudulent overvaluation of $1,000. In such a hypothetic situation, Holcombe would have gotten seven pieces of property without a taint, and could not say fairly that he had not received exactly what he bargained for. It might well be that any or all of such seven pieces had been valued too high, or too low, but that is not material, since both parties have accepted, agreed upon, and acted upon such valuations. As to the Frederick property, Holcombe would, of course, have the right to have the agreed valuation made whole, since such valuation was the result of fraud. I think he can go no further. If he elects to enforce the contract and recover the damage through fraud, then he can recover only such damage as can be traced to that fraud. In my opinion, the judgment below gave him not only the damage from fraud, but permitted him to have a jury set aside the honest agreed values as to all other tracts, and thus substitute an entirely new basis of values, and therefore an entirely different contract for the one the parties made. I think the case of Southern Ice Co. v. Morris, 219 Fed. 551, 135 C. C. A. 319, more nearly governs this case than any which have been brought to our attention.