George D. Wagner, plaintiff, brought suit against the Toledo, Peoria and Western Railroad, defendant, in the circuit court of Peoria county, to recover on account of personal injuries and for damages to his automobile incurred in a grade-crossing accident. From a judgment in his favor in the sum of $5000 defendant appealed to the Appellate Court for the Second District, where the judgment was affirmed. The cause is in this court by certiorari.
The declaration consists of five counts. The first count charges general negligence. The second count avers no bell was rung or whistle blown, as required by statute. The third count is based upon an alleged failure to comply with the statute of 1874 requiring signs to be posted at grade crossings. The fourth count charges the failure to give sufficient warning of the train's approach. The fifth count charges negligence because of failure of defendant to maintain signs, gates, a watchman, or other means of warning to persons on the highway at its intersection with the railroad. *Page 87 
Over the Illinois river at Peoria is a bridge, generally known as the Lower Free Bridge, extending southeast from the city of Peoria to Tazewell county, on the east side of the river. State highway 24 for some distance southeast of the bridge is known as West Washington street. The highway continues toward the south through Tazewell county. A very short distance south of the Tazewell county end of the bridge State Route 8 connects with Route 24 upon the eastern side and runs southeast, bearing somewhat more to the east than Route 24. For some distance south of the bridge defendant's railroad track lies west of and parallels State Route 8. Immediately south of the junction of the two highways the railroad track crosses West Washington street at a very acute angle and proceeds across the river upon a bridge southwest of the free bridge. At about nine o'clock P. M. on March 18, 1930, plaintiff drove over the free bridge from Peoria to the Tazewell county side enroute to Chicago Heights. He intended to take Route 8 at its intersection with Route 24. He had never been over Route 24. In May, 1928, he went from Chicago Heights to Peoria via Route 8 in the night time but did not cross the place where the accident occurred. He had no knowledge of the presence of defendant's railroad tracks across the pavement prior to the time of the accident. The distance between the end of the bridge and the nearest rail of the railroad track, where the left-hand wheel of an automobile traveling south would ordinarily pass, is about ninety feet. The railroad track was practically flush with the surface of the pavement. No warning signs were maintained on either side of the tracks at the highway intersection, and there were no gates, watchmen, bells, lights or other means of warning. Several incandescent lights were located along the top of the superstructure of the bridge but there was no street light near the intersection of defendant's track with the highway. The highway across the free bridge was a very much-traveled thoroughfare and was the only direct *Page 88 
exit from the city of Peoria across the Illinois river to the east side. The testimony shows that from six o'clock in the morning until midnight an average of 1000 cars per hour passed over the bridge. There were many lights on various buildings and filling stations located on both sides of Route 24. Plaintiff's vision was met almost squarely by the lights of the automobiles traveling towards him on both highways. Plaintiff drove off the east end of the bridge at the rate of ten to fifteen miles an hour, intending to take Route 8, but missed it and instead drove straight ahead on Route 24 onto the defendant's tracks. He testified that as he drove off the bridge he looked straight ahead and to the left and right and noticed many lights; that he could not tell whether they were moving or stationary; that he observed those on the buildings and on automobiles coming from the opposite direction but saw nothing to indicate a railroad; that the first he knew of the presence of a train was when he heard its roar and the shriek of the whistle; that he saw the locomotive within six or eight feet of him, and that he had no recollection of what happened after the collision. He and four other witnesses who were in the immediate vicinity at the time of the accident testified they heard no whistle or bell until an instant before the collision. Defendant produced testimony to show that the locomotive was a large engine equipped with an electric headlight of one million candle power; that the headlight was burning, the bell was rung and the whistle was sounded repeatedly before the accident. The engineer testified that he saw the automobile coming off the end of the bridge at the time the locomotive was about one-third of the way over the crossing, and the car came straight ahead and struck the right front end of the engine.
Defendant contends that the trial court should have directed a verdict in its favor and discusses this contention under three principal heads: First, that there is a fatal variance between the averment that the locomotive ran into *Page 89 
and collided with the automobile and the proofs on that issue; second, that the record fails to show negligence on the part of defendant; and third, that the evidence shows that plaintiff was guilty of contributory negligence. While under the law we are precluded from examining and weighing the evidence to determine where the preponderance lies or how the case should have been decided, (Coal Creek Drainage District v. SanitaryDistrict, 336 Ill. 11,) yet this assignment of error presents the question whether or not there is in the record any evidence which, together with the inference reasonably to be drawn therefrom, sufficiently supports a verdict for plaintiff, and in passing upon this question we are bound to assume that the evidence favorable to plaintiff is true. Sherwin v. City ofAurora, 257 Ill. 458.
The claim of variance is predicated upon the assertion that the testimony shows that the automobile struck the locomotive, contrary to the averment that the locomotive ran into and collided with the automobile. It is contended that if the accident had occurred as alleged in the declaration the locomotive would have struck the left side of the automobile. The pavement runs almost north and south. The railroad tracks run in a northwest direction toward the bridge and cross the pavement at an acute angle. The right front portion of a vehicle proceeding south would reach the railroad track first and receive the impact from a collision on the track. The right-hand step on the front of the locomotive was driven back under the pilot beam against the front wheel on the right side. The right front side of the automobile was crushed and the engine driven back under or about to the front seat, beneath the steering wheel. The windshield and the transmission were broken. The proof shows that the locomotive and the automobile were both in motion, approaching the same spot at the same time, and they collided almost head on. The record gives no support to the claim of variance. *Page 90 
Defendant contends that it is not required to maintain warning signs at highway intersections except where specifically directed by the Commerce Commission, and that the record fails to show any order or direction of the commission relative to signs at the intersection where the accident occurred. Section 58 of chapter 111a of Cahill's Statutes of 1931 provides: "Every railroad operating within the State of Illinois shall maintain in a conspicuous place at every grade crossing on its lines in this State outside of cities on both sides of the tracks except when otherwise ordered and at such points as directed by the Illinois Commerce Commission within the right of way of such railroad, at grade crossings not designated as extra-hazardous by the commission such standard signs as the Illinois Commerce Commission shall determine." Under this section, if the place of the accident was outside the limits of a city, defendant was required to install and maintain warning signs of the kind prescribed by the Commerce Commission. There was competent evidence to show that the accident did not occur within a city, but there was no evidence that the Commerce Commission ever prescribed a type of standard sign. This statute superseded the statute of 1874, upon which the third count was based. But regardless of the situation produced by the failure to prove an order of the commission, there is a common law duty devolving upon railroads to exercise such care and use such precautions as will enable the traveler on the highway, if he exercises ordinary care, to ascertain in the night time the approach of a train over a street crossing such as the testimony shows this one to have been. Special conditions creating special hazards at crossings require a watchman, gates or other warning to travelers. Opp v. Pryor,294 Ill. 538.
The record discloses that the situation of the railroad tracks and the numerous lighted automobiles traveling along the two pavements running in the same general direction, together with many lights along the highways, would *Page 91 
be very apt to confuse a stranger so that he might not be able to distinguish the headlight on a train approaching the intersection. Under the circumstances shown by the record, the ringing of the bell and the blowing of the whistle would not ordinarily cause a stranger traveling at night to associate the sounds with a locomotive about to cross the pavement. In the absence of any other warning it would be but natural to assume that a light approaching from the opposite direction was traveling parallel with him and would not cross his path. The conditions at the crossing were shown to be very dangerous in the night time. There was nothing to indicate to a traveler who was not familiar with the situation that there was any railroad crossing there. The rule in this State is that one crossing a railroad track must approach it with the amount of care commensurate with the known danger, (Greenwald v. Baltimore andOhio Railroad Co. 332 Ill. 627,) but if the existence of the track would not be revealed to one in the exercise of reasonable care the rule cannot apply. Under this doctrine the court properly declined to give defendant's first refused instruction. The plaintiff had never before passed over the place of the accident and did not know there was any railroad there. A railroad company in the running of its trains is required to exercise ordinary care and prudence to guard against injury to those who may be traveling upon the public highway and crossing its tracks. The fact that the statute may provide one precaution does not relieve the company from adopting such others as public safety or common prudence may dictate. The ringing of a bell and the blowing of a whistle are not alone sufficient to excuse a railroad company from maintaining other means of warning the traveling public when conditions are such as shown in the case at bar. (Chicago,Burlington and Quincy Railroad Co. v. Perkins, 125 Ill. 127;Indianapolis and St. Louis Railroad Co. v. Stables, 62 id. 313; 22 R. C. L. sec. 226; Eaton v. Fitchburg *Page 92 Railroad Co. 129 Mass. 364; Grand Trunk Railroad Co. v. Ives,144 U.S. 408.) Even in the absence of statutory requirements it may be negligence not to provide a signboard, if the crossing is of unusually dangerous character. Shaber v. St. Paul, etc.Railroad Co. 28 Minn. 103; Winstanley v. Chicago, etc.Railroad Co. 72 Wis. 375.
We are of the opinion that the testimony on the part of the plaintiff, standing alone, is sufficient to authorize a verdict for the plaintiff both as to the negligence of the defendant and the due care of the plaintiff. The trial court therefore properly refused to direct a verdict for defendant and correctly submitted the issues to the jury. Where the Appellate Court has affirmed a judgment for plaintiff in an action at law and there is a motion by defendant for a directed verdict, this court may examine the evidence for the purpose of determining whether or not there is a total failure to prove any one or more of the elements necessary to maintain the cause of action, but we are precluded from weighing the evidence to determine where the preponderance lies or how the case should have been decided. Coal Creek Drainage District v. Sanitary District,supra; Illinois Central Railroad Co. v. Oswald, 338 Ill. 270.
Complaint is also made of alleged errors in the admission and rejection of evidence and in modifying and refusing instructions tendered by defendant. A careful review of the record discloses no reversible error in either respect. The second and fifth instructions refused are not correct statements of the law. The other instructions refused are covered by the given instructions. Several instructions were properly modified to apply the law to the facts in the record.
The judgment of the Appellate Court followed that of the trial court and is affirmed.
Judgment affirmed.
DUNN and DEYOUNG, JJ., dissenting. *Page 93