William Wright Shaw, Administrator of Estate of
Maye Leota Shaw, Appellee, v. Chicago and East-
ern Illinois Railroad Company, Appellant.

Term No. 47M2.

286

Opinion filed September 15, 1947. Rehearing denied October 16, 1947. Released for publication October 22, 1947.

CONRAD SCHUL, CURTIS WILLIAMS, both of Mt. Vernon, and MOSES PULVERMAN, of Benton, for appellant; K. L. RICHMOND and C. M. RODDEWIG, both of Chicago, of counsel.

STONE & FOWLER, of Marion, and A. D. MORGAN, of Herrin, for appellee.

MR. PRESIDING JUSTICE BARTLEY delivered the opinion of the court.

Plaintiff appellee, hereinafter called plaintiff, recovered a judgment against the defendant appellant, hereinafter called defendant, in the circuit court of Jefferson county for $5,500 because of the alleged

wrongful death of Maye Leota Shaw, who was killed on January 19, 1945, about 7:45 a. m. wartime (6:45 a. m. standard time) when struck by defendant's passenger train at a highway crossing, known as the Toll Road crossing, near Mt. Vernon, Illinois.

The negligence charged was that the defendant negligently failed to remove from the right of way for 500 feet southeast of the crossing, all brush, shrubbery and trees, in violation of the statute; negligently permitted grass, weeds, brush, shrubbery and trees of such height and density as to obstruct the visibility of trains approaching the crossing from the southeast to motorists approaching from the southwest to remain along the right of way for 1000 feet southeast of the crossing; negligently failed to keep proper lookout for traffic approaching from the southwest; negligently failed to give reasonable warning by whistling, in view of conditions existing, as train approached crossing; negligently failed to blow whistle or ring bell from a point 80 rods southeast of the crossing, in violation of the statute; negligently drove train in a northwesterly direction toward crossing at excessive speed, in view of the fog and weather conditions existing; negligently drove train in a northwesterly direction toward crossing at excessive speed without keeping a lookout for traffic approaching from the southwest and without giving warning by whistle as reasonably required, in view of conditions existing; and knowing that the vision of one approaching from the southwest, of trains approaching from the southeast, was obscured by the aforesaid fog and weather conditions and by aforesaid growth along the right of way, drove train in a northwesterly direction at an excessive speed without keeping a lookout for traffic approaching the crossing from the southwest and without giving warning by whistle as reasonably required, in view of conditions existing.

At the close of all evidence, defendant made a motion for a directed verdict which was overruled by the

court, and after the verdict by the jury, made motions for a judgment in its favor notwithstanding the verdict and, in the alternative, for a new trial, all of which were denied and overruled by the trial court.

Defendant's railroad extends from Cypress, Illinois, through Mt. Vernon and on northerly through various cities to Chicago. After leaving Mt. Vernon and about a half mile south of Toll Road crossing, the track, which is single, makes a curve to the left and after rounding the curve, runs approximately north in a straight stretch to the Toll Road crossing and for a mile and more beyond. There is a whistling post north of the curve and 1320 feet south of the crossing. The railroad right of way at the intersection is 100 feet wide and the railroad track is practically in the center of the right of way. The track is between 4 and 5 feet higher than Toll Road before you start up the grade and the road bed is about 12 feet wide, being located on an embankment. There is low bottom land on either side of the embankment which is covered with water at times. Telephone poles on the west side of the track are set in the usual manner, about 132 feet apart, the first pole south of the crossing being about 100 feet south. Standard cross-arm "Railroad Crossing" signs are on each side of the crossing 8 feet from the track and 6½ feet above the ground.

The Toll Road west of the crossing, from fence to fence, is 30 feet wide and is surfaced with gravel and goes up a slight grade with a rise of 3 or 4 feet to the track. At the crossing, between and outside the rails, are oak planks 25 feet long. The crossing itself was in no way defective.

The train in question was a regular northbound passenger train consisting as usual of the engine at the front or north end, next, a combination mail and baggage car and a passenger coach at the rear. It arrived at Mt. Vernon that morning about 7:40 a. m.

wartime (6:40 a. m. standard time) five or ten minutes behind the regular schedule, which was a frequent occurrence. Other passenger trains and freight trains also operated over the same track during the early morning hours at approximately the same time the train in question was due at the crossing.

At the time of the accident there was a slight fog and misty rain and it was also dark and cloudy. The accident occurred just before daybreak. Immediately prior to the collision, the train was running north along the half mile stretch from the curve to the crossing at a speed of about 35 miles per hour. At the front of the locomotive there was a 32 volt electric headlight, the usual and standard kind, which was burning continuously from the time the train left Mt. Vernon until after the accident. On the morning of the accident, the headlight lighted up the track about a quarter of a mile ahead of the engine and the passenger coach was also brightly lighted, which lights were visible from the outside. The engine had a standard equipment bell weighing over 60 pounds which was ringing continuously and automatically from the time the train left Mt. Vernon until after the accident. Beginning about at the whistling post, the engineer sounded the regular standard crossing signal of two long, one short and one long blast continuously up to 50 to 100 feet of the crossing.

None of the train crew, nor did anyone else, see the automobile on the Toll Road as it approached the crossing from the west prior to the collision. The engineer was in his seat on the east or right side of the engine cab and could not see to the west or left side of the track since the boiler of the engine shut off his view to the left. He first saw the automobile when he hit it and it was almost over the east rail when struck. The fireman was seated when the train left Mt. Vernon on his seat box on the left side of the cab at the window. At the time of the accident he had

gotten down off the seat box and was putting coal in the fire until the collision. When the collision occurred, the engineer put on the air brakes and stopped the train a little north of the crossing and backed up to the crossing.

The deceased was 47 years old and lived with her husband in Mt. Vernon. Since October 1944, she had been teaching school at a schoolhouse about 2 miles east of the crossing and drove over the crossing back and forth every school day early in the morning and at night and was entirely familiar with it and the vicinity. She knew the operations of the trains at the crossing in question. She was driving a 1935 Buick automobile which was in good operating condition. She was in perfect health and her sight and hearing were good. She was an experienced driver. There being no eyewitnesses to the accident, evidence was offered tending to prove habits of care and caution of the deceased in driving her car.

The railroad runs just a little to the northwest and the Toll Road east and west and a little to the northeast. They cross at not much more than a right angle. Pictures and oral testimony showing conditions surrounding the crossing were offered in evidence. These pictures and oral testimony show that there were some trees, bushes, shrubbery and the like on the right of way and some trees on the land adjoining overhanging the right of way at the time of the accident, but that there was no foliage on the trees or bushes, as what growth there had been was dead from the effects of frost and weather. None of these were sufficient in any material way to interfere with the vision of the approaching train from a southerly direction.

The evidence showed that at a point 200 feet west of the crossing, looking southeast, one could see a train 2000 feet south of the crossing continuously until it got to the crossing, and at a point 25 feet west of

the crossing, a train could be seen about half a mile south to the curve and that a person coming along Toll Road toward the crossing in weather conditions then obtaining, could have seen the headlight on the engine after it rounded the curve south of the whistling post.

A railroad company in the operation of its trains is required to exercise ordinary care and prudence to prevent injury to those who travel upon a public highway crossing its tracks. The standard of care is that of ordinary care under the surrounding facts and circumstances, and such precaution as prudent management for public safety requires. It must keep its right of way free of trees and shrubs so as not to obstruct vision. It must keep a reasonable lookout. It must ring its bell or blow its whistle in accordance with the statute. It must operate its trains at a reasonable rate of speed depending on the conditions of the particular situation and having regard to the demands of public commerce for the necessity of speed. If it is derelict in any of these duties, the results of which are the proximate cause of injuries, the railroad company is liable. (*Wagner v. Toledo, P. & W. R. R.*, 352 Ill. 85; *Chicago & R. I. R. Co. v. Still*, 19 Ill. 499; *Humbert v. Lowden*, 385 Ill. 437; *Goodrich v. Sprague*, 376 Ill. 80; *Indianapolis & St. L. R. Co. v. Smith*, 78 Ill. 112; *Provenzano v. Illinois Cent. R. Co.*, 357 Ill. 192; 44 Am. Jur. under the title "Railroads" paragraphs 493, 510, 511.)

On the other hand, the rights and duties of railroads and travelers upon the highway crossings are mutual and reciprocal. Each must have regard for the rights of the other. Railroad crossings are dangerous places and one crossing the same must approach the track with that degree of care that is commensurate with its known danger. When a traveler on a highway fails to use ordinary precaution while traveling over a crossing, it is generally condemned as negligence. The law requires a traveler, under such

circumstances, to make diligent use of his senses of sight and hearing; to retain proper control of his vehicle and to exercise that degree of care that is commensurate with the known danger to be anticipated. He is required to look and listen and if necessary, stop, rather than attempt to pass in front of an advancing train. (*Moudy v. New York, C. & St. L. R. Co.,* 385 Ill. 446; *Carrell v. New York Cent. R. Co.,* 384 Ill. 599; *Robertson v. New York Cent. R. Co.,* 388 Ill. 580; *Willett v. Baltimore & O. S. W. R. Co.,* 284 Ill. App. 307; 44 Am. Jur. under title "Railroads," paragraphs 495, 546, 547, 549, 550.)

Applying the foregoing rules of law, we find that while there was some brush, shrubbery, trees and the like on the right of way or overhanging it, none materially obstructed the view of one approaching the crossing from the west; that the engineer was in his seat and maintaining a lookout ahead and that the fireman had momentarily left his seat to engage in the necessary operation of firing the engine; that the whistle on the train was blowing and the bell was ringing in accordance with the statute; that the rate of speed of the train was 35 miles per hour, a reasonable rate of speed. We find also, that the headlight of the train, a standard one, was burning and that the lights in the only coach on the train were lighted. We fail to see, therefore, that the defendant was guilty of any negligence which proximately contributed to the accident in question.

On the other hand, it appears from the evidence that plaintiff's intestate was 47 years old, in good health, had good eyesight and good hearing and was an experienced driver. She was thoroughly familiar with the crossing in question and the impending dangers thereat, and that from a point 200 feet west of the crossing she had a continuous view of the train 2000 feet down the track in the direction from which it was approaching and that from a point 25 feet west

of the crossing she could have seen about a quarter of a mile south. It is true that the mist and fog and rain may have to some extent interfered with her vision, but if so, this required a greater degree of care on her part.

As hereinbefore stated, no one saw the collision in question and what actually happened is known only by God and can only be left to guess and speculation. However, from the record, the only conclusions that can be drawn from it is that the sole and proximate cause of the accident was either contributory negligence of plaintiff's intestate or some intervening independent cause which the railroad company was not bound to foresee or anticipate, such as some kind of mechanical failure of the automobile or the like, in either of which event, the railroad company would not be liable. As said by the Supreme Court in the case of *Moudy v. New York, C. & St. L. R. Co.,* 385 Ill. 446, 454, "The distinction between a crossing accident occurring from lack of due care upon the part of the plaintiff, or because of an intervening cause under his control, or at least not under the control of the defendant, is so slight as to make rules applicable to them practically the same."

We are of the opinion that the evidence in this case most favorable to the plaintiff fails to show that the defendant was negligent and fails to show that plaintiff's intestate was in the exercise of due care or, that the alleged negligence of the defendant was the proximate cause of the accident.

The judgment of the circuit court of Jefferson county is reversed and judgment is entered by this court in favor of the defendant and against the plaintiff herein in bar of the suit and for costs to be paid in due course of administration.

*Judgment reversed.*

CULBERTSON and SMITH, JJ., concur.