**BALTIMORE & O. R. CO. v.
FELGENHAUER.**

No. 13635.

Circuit Court of Appeals. Eighth Circuit.
May 19, 1948.

Rehearing Denied June 9, 1948.

Rudolph J. Kramer, of East St. Louis, Ill. (Bruce A. Campbell and John C. Roberts, both of East St. Louis, Ill., and Fred W. Schwarz, of Webster Groves, Mo., on the brief), for appellant.

B. Sherman Landau, of St. Louis Mo. (Louis E. Miller, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, THOMAS, and COLLET, Circuit Judges.

THOMAS, Circuit Judge.

On November 24, 1944, Ora Fred Felgenhauer driving a truck across a railway grade crossing at Broadway street in the city of Salem, Illinois, was struck and instantly killed by a train operated by appellant.

John Felgenhauer, father of the deceased and the qualified administrator of his estate, hereinafter called plaintiff, brought this action under an Illinois statute against appellant, hereinafter called defendant, in the district court for the eastern district of Missouri, to recover damages suffered by his decedent's next of kin because of his death.

As grounds for recovery plaintiff alleged that the crossing "was unusually hazardous and dangerous by reason of the peculiar circumstances and conditions existing thereat, but was not equipped with adequate protective devices for the protection of persons and vehicles passing over it; and that

"The aforesaid collision, and the resultant death of the decedent directly and proximately resulted from the following:

"I. Defendant wilfully or recklessly or negligently operated its train toward said Broadway crossing at a high, dangerous and excessive rate of speed.

"II. Defendant wilfully or recklessly or negligently invited the decedent, by signal, to pass over said crossing, immediately in front of the defendant's said passenger train.

"III. Defendant wilfully or recklessly or negligently failed to equip said crossing with crossing gates."

The Illinois statute, Ill.Rev.Stat.1945, c. 70, § 2, under which the action was brought provides that "in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person, not exceeding the sum of $10,000 * * *."

The complaint alleged and the evidence showed that the decedent was 21 years of age at the time of his death, unmarried, and that he left surviving him next of kin including both his parents, four sisters and three brothers.

The defendant denied all allegations of negligence and of willful or reckless conduct charged in the complaint, and, as an affirmative defense, alleged that the injuries resulting in the defendant's death were due entirely to his contributory negligence.

The case was tried to a jury, and a verdict was returned for the plaintiff upon which judgment was entered for $10,000.

Jurisdiction, admitted by defendant, is based upon diversity of citizenship. Both parties recognize, also, that since the cause of action alleged in the complaint is based upon an Illinois statute and the fatal accident happened in Illinois the questions presented are to be determined by the applicable law of that state. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487.

Upon exceptions duly saved in the trial court the defendant seeks reversal of the judgment on the grounds that the court erred (1) in its failure to sustain defendant's motion for a directed verdict; (2) in the admission and exclusion of evidence; and (3) in certain instructions given and in the refusal of certain requested instructions.

Determination of these contentions requires a brief statement of the facts developed upon the trial. In making such statement we do not, under the well-settled rule, weigh the evidence but consider it from the standpoint most favorable to the plaintiff. Ocean Accident & Guarantee Corporation v. Moore, 8 Cir., 85 F.2d 369, 376; Limbeck v. Interstate Power Co., 8 Cir., 69 F.2d 249; Baltimore & O. R. R. Co. v. Groeger, 266 U.S. 521, 524, 45 S.Ct. 169, 69 L.Ed. 419; Western & A. R. R. v. Hughes, 278 U.S. 496, 498, 49 S.Ct. 231, 73 L.Ed. 473: Applying the foregoing rule, the facts material on this appeal may be stated as follows:

On November 24, 1944, and for a long time prior thereto, Illinois State Highway No. 37 passed through Salem in a north-south direction on Broadway street. The tracks of the defendant running in an east-

west direction through the built-up part of the city intersect the highway at right angles. About 150 feet west of the crossing the railway curves to the south. Two tracks, the main line and a passing track, cross Broadway street, and a third track, designated as the house track, branches off on the south side of the passing track just west of the street crossing. Often freight cars are left standing on the two south tracks west of the crossing. The freight station is 285 feet west of the center of the street on the south side of the house track. Another building on the south side of the track is 84.4 feet west of the center of the crossing. The passenger station is located on the north side of the tracks a short distance west of the street. Vehicular traffic is restricted in its view of approaching trains by reason of buildings, structures and railroad rolling equipment sometimes stored or standing near the crossing. Often, too, noises in the neighborhood render it difficult to hear the usual signals of approaching trains or to distinguish such signals from the signals of switching operations going on in the yards.

Sometimes during switching operations on the passing track a brakeman was stationed at the crossing to protect the movements of trains by stopping and directing traffic on the highway.

Not all passenger trains stopped at the station in Salem. Some such through trains passed over the Broadway crossing at a speed of 70 to 75 miles an hour and freight trains at a speed of approximately 35 to 40 miles an hour.

But one protective device at the crossing warned travelers on the highway of approaching trains—a flasher light operated by batteries which began flashing when a train approaching from the west was about 2,955 feet distant. The light continued to flash until the train had passed over the crossing. For some distance this light was also connected with the passing track west of the crossing, one witness for the defendant testified for a distance of approximately 60 to 65 feet. When cars were left standing on the passing track within the signal circuits the light flashed continuously even though no train was approaching, so that persons driving vehicles could not determine by observing the flasher light whether or not a train was approaching. In short, the flasher light could not always be depended upon to give warning of approaching trains. Plaintiff's decedent had frequently driven trucks over the crossing and was familiar with this situation.

On September 21, 1944, the Illinois Commerce Commission made a survey of the traffic over the Broadway crossing and found that between 8:00 a. m. and 6:00 p. m. of that day 2810 vehicles, nine passenger trains, eight freight trains and six switch engines passed over the crossing.

The findings of the Commerce Commission also disclosed that subsequent to January 1, 1928, and prior to October 24, 1944, 12 reportable accidents had occurred at the Broadway crossing. The defendant admitted that a copy of these findings together with the order entered by the Commission on October 24, 1944, had been served upon it. In answer to an interrogatory propounded by plaintiff defendant stated that in addition to the accident involved in this case six persons were fatally injured at the same place when the automobile in which they were riding was struck by a train on December 26, 1935; one man was injured there on February 5, 1941; two men were fatally injured on January 10, 1943; two men on January 30, 1943; and one man on July 5, 1944.

The collision resulting in the death of plaintiff's decedent occurred at 11:03 a. m. on November 24, 1944. Immediately before the collision decedent approached the crossing from the south driving his truck at a very low speed. The flasher light was in operation. Some freight cars stood on the passing and house tracks about 75 feet west of the crossing which with the adjoining buildings obstructed the view of a passenger train then approaching from the west at a speed of approximately 70 miles per hour. A few minutes earlier a freight engine with some cars had crossed on the passing track from west to east, and the conductor had stationed a young brakeman about 17 years of age with only three weeks' experience in railroading on the crossing to signal vehicles. He took a position on the west side of the highway facing east and signaled to waiting vehicles on

both the north and the south sides of the tracks to come on across. In obedience to his signal Mrs. F. O. Lewis, driving a coupe from the north, crossed over to the south just ahead of the train. The decedent accelerated the speed of his truck and moved on to the tracks from the south where he was struck by the train and instantly killed.

The court fully instructed the jury on the issues of common law negligence and contributory negligence. It is not claimed that the legal principles stated in these instructions are incorrect; but the defendant contends that a verdict should have been directed for it on the ground that no evidence supported the charge of negligence and that the evidence showed conclusively and as a matter of law that the decedent was guilty of contributory negligence.

1. *Motion for directed verdict.*—The question of the sufficiency of the evidence to require the submission of the issues to the jury was raised in the lower court by a motion for a directed verdict for the defendant, by a motion for judgment non obstante veredicto or for a new trial, and by requested instructions to withdraw from the consideration of the jury the issues of willfullness or recklessness of the defendant. These motions and requests were denied by the court, and, we think, rightfully so. The evidence as summarized above was substantial and sufficient, under Illinois law, to support the verdict.

■ The defendant assails with particular emphasis the submission to the jury of the issue of willfullness or recklessness. Under Illinois law the question of willful conduct is an issue of fact to be decided by the jury, unless the evidence, viewed in the most favorable light for the plaintiff, does not tend to show willful acts done without regard to the safety of others. Trumbo v. Chicago, B. & Q. R. Co., 389 Ill. 213, 59 N.E.2d 92, 95; Robertson v. New York Cent. R. Co., 388 Ill. 580, 58 N.E.2d 527; Bartolucci v. Falleti, 382 Ill. 168, 46 N.E.2d 960; Morgan v. New York Cent. R. Co., 327 Ill. 339, 158 N.E. 724. In the cited cases the court pointed out that the question of willfullness is for the jury when the evidence in its aspects most favorable to plaintiff, together with all reasonable inferences arising therefrom, tends to show (a) a consciousness on the part of defendant that its conduct would naturally and probably result in injury; *or* (b) an intentional disregard of a known duty; *or* (c) an absence of care for the life, person or property of others such as exhibited a conscious indifference to consequences.

In Jeneary v. Chicago & I. Traction Co., 306 Ill. 392, 138 N.E. 203, 206, the Court said:

"Ill will is not a necessary element of a wanton [willful] act. To constitute a wanton act the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person, or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal willfulness, such as charges the person whose duty it was to exercise care with the consequences of a willful injury."

■ Mere carelessness is not sufficient to prove willfullness. Provenzano v. Illinois Cent. R. Co., 357 Ill. 192, 191 N.E. 287; Robertson v. New York Cent. R. Co., supra. And negligence and willful misconduct are not synonymous. Bartolucci v. Falleti, 382 Ill. 168, 46 N.E.2d 980. But whether the Broadway crossing was unusually hazardous requiring some additional safety devices; whether defendant had sufficient notice of the situation to have remedied such hazard in the proper performance of its duty to travelers on the highway; whether it was derelict in placing a youthful and inexperienced flagman at the crossing who signaled plaintiff's decedent and other travelers to cross in front of a fast moving train; and whether under all the circumstances shown in evidence the defendant's conduct was willful and reckless were questions for the jury. Grand Trunk Ry. Co. v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485; Voorhees v. Chicago & A. R. Co., 215 Ill.App. 531; Chicago, B. & Q. R. Co. v. Murowski, 179 Ill. 77, 53 N.E. 572.

2. *Admission and exclusion of evidence.*—The defendant contends that the court erred in admitting in evidence proof of the traffic conditions existing at the Broadway crossing on September 21, 1944, as found by the engineers who then made the survey for the Commerce Commission.

This contention is based on the ground that the traffic conditions at that time did not tend to show the conditions existing at the time of the collision on November 24, 1944. The contention is not supported by citation of any rule of evidence or other legal authority. The record discloses no change in traffic conditions at the crossing between the two dates, and the dates are not so remote as to render inapplicable the rule that a condition of a continuous nature shown to exist on the first date is presumed to exist on the latter in the absence of proof to the contrary. In re Chicago & N. W. Ry. Co., 7 Cir., 138 F.2d 753, 755, certiorari denied 321 U.S. 789, 64 S.Ct. 788, 88 L.Ed. 1079; Kortz v. Guardian Life Ins. Co. of America, 10 Cir., 144 F.2d 676, 678, certiorari denied 323 U.S. 728, 65 S.Ct. 63, 89 L.Ed. 584. Under the applicable rule the burden shifted to the defendant to show a changed condition, which it failed to do.

Over objection of defendant the court admitted in evidence the order of the Illinois Commerce Commission of October 24, 1944, showing the hazardous conditions found by the survey of September 21, 1944, to exist at certain street crossings in Salem, including the Broadway crossing, and directing certain general improvements for the public safety. At the request of defendant the court then instructed the jury:

"This order does not show any violation of duty by the defendant, the Baltimore & Ohio Railroad Company, and it was not received in evidence for that purpose. It was received in evidence for the limited purpose only of showing that the extra hazardous condition of those crossings was brought to the attention of the defendant at that time by the Illinois Commerce Commission."

Defendant argues that the admission of this order "was very damaging to defendant on the trial because the court also submitted to the jury the question of whether or not defendant wilfully or recklessly or negligently failed to equip the crossing with crossing gates or other protective device."

If it be assumed that the admission of the order was in the first instance erroneous for some purposes but admissible, as we hold and defendant's requested instruction implies, to prove notice of the hazardous condition existing at the crossing, still it cannot be presumed that the jury disregarded the defendant's requested instruction, supra, given by the court. Graf v. Holcombe, 8 Cir., 277 F. 687; Valley Shoe Corporation v. Stout, 8 Cir., 98 F.2d 514, 519; Equitable Life Assur. Soc. of the United States v. Sieg, 6 Cir., 53 F.2d 318. A similar question arose in the case of Southern Pacific Co. v. Schoer, 8 Cir., 114 F. 466, 57 L.R.A. 707, and this court held that a writing which contains competent evidence upon a material issue cannot be lawfully rejected because it also contains evidence which is incompetent and irrelevant. The court, speaking through Judge Walter H. Sanborn, pointed out that in such a situation the proper remedy of counsel for the objecting party is to request the court to instruct the jury at the time of the introduction of the writing or at the close of the case that it could not be considered for any purpose other than the purpose for which it was competent and relevant. The defendant having followed the procedure thus suggested and the court having given defendant's requested instruction, there exists no ground for complaint. See, also, State ex rel. Kansas City Public Service Co. v. Shain, 345 Mo. 543, 134 S. W.2d 58, 61, 124 A.L.R. 1331.

In answer to plaintiff's interrogatory No. 11 the defendant stated in detail the number of persons killed or injured at the Broadway crossing from December 26, 1935, to January 10, 1943. At the trial the answer was admitted in evidence over defendant's objection. Defendant contends that the evidence shown in the answer "could be of no possible benefit in determining whether there was liability in this case, but it was prejudicial to read it to the jury." We think there is no doubt that the evidence included in the answer was admissible to show the dangerous character of the crossing. District of Columbia v. Arme, 107 U.S. 519, 524, 525, 2 S.Ct. 840,

27 L.Ed. 618; Chicago & N. W. R. Co. v. Netolicky, 8 Cir., 67 F. 665, 672; Henwood v. Chaney, 8 Cir., 156 F.2d 392, 397; certiorari denied 329 U.S. 760, 67 S.Ct. 113, 91 L.Ed. 655; Evans v. Erie R. Co., 6 Cir., 213 F. 129, 133.

The defendant further asserts that the court erred in sustaining an objection by plaintiff to a question asked defendant's witness Dunn and in charging the jury to disregard certain testimony of the witness Wallis. We have carefully examined all these assignments of error and find they are without merit.

3. *Instructions given and refused.*—The defendant assails the submission to the jury of the issue of willfullness or recklessness not only by its motion for a directed verdict; it complains, also, of the instructions given and refused on that issue.

The law controlling the jurisdiction of a federal appellate court when the charge to the jury is claimed to be erroneous is clear. Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, providing that "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection" has the force of law. Mill Owners Mut. Fire Ins. Co. v. Kelly, 8 Cir., 141 F.2d 763. And it has always been the rule in the federal courts that "Unless a request for instructions is entirely correct, and may properly be given without qualification or liability to be misunderstood, there is no error in refusing it." Coney Island Co. v. Dennan, 6 Cir., 149 F. 687, 692; Blanton v. United States, 8 Cir., 213 F. 320, 326, Ann.Cas.1914D, 1238; Brooks v. Marbury, 24 U.S. 78, 11 Wheat. 78, 92, 6 L.Ed. 423; Guerini Stone Co. v. J. P. Carlin Const. Co., 240 U.S. 264, 283, 36 S. Ct. 300, 60 L.Ed. 636; Panama R. R. Co. v. Johnson, 264 U.S. 375, 393, 44 S.Ct. 391, 68 L.Ed. 748; Shokuwan Shimabukuro v. Higeyoshi Nagayama, 78 App.D.C. 271, 140 F.2d 13.

The defendant objected to the instruction given by the court on the issue of willfullness which reads:

"If you find and believe from the evidence that the defendant's acts or omissions, if any, in failing to provide additional protective device at the crossing, or in operating the passenger train on the occasion in question at the rate of approximately 70 miles an hour, or in signaling the deceased to cross over the crossing directly in the path of the approaching passenger train, if you so find, as submitted in the charges of the Court, manifested a wilful or reckless indifference to the rights, safety or physical welfare of the deceased, Ora Fred Felgenhauer, on the occasion described in the evidence, then and in such event, the contributory negl'gence, if any, of the deceased at the said time and place is no defense to this case.

\*   \*   \*   \*   \*   \*

"\* \* \* if you \* \* \* further find the defendant's acts or omissions, if any, as heretofore submitted to you in these charges, manifested a wilful or reckless indifference to the rights, safety or physical welfare of the deceased, Ora Fred Felgenhauer, on the occasion shown in evidence; and if you further find that the said acts or omissions of the defendant directly caused the collision of the defendant's eastbound passenger train with the truck operated by the deceased, and that the death of Ora Fred Felgenhauer directly resulted from the said collision, \* \* \* then your verdict should be in favor of the plaintiff and against the defendant."

It is the law of Illinois that contributory negligence of an injured party does not relieve a defendant from liability in an action for damages caused by the defendant's willful acts or omissions. Walldren Express & Van Co. v. Krug, 291 Ill. 472, 126 N.E. 97, 98; Heidenreich v. Bremmer, 260 Ill. 439, 103 N.E. 275; Illinois Cent. R. Co. v. Leiner, 202 Ill. 624, 67 N.E. 398, 95 Am.St.Rep. 266; Wabash R. Co. v. Speer, 156 Ill. 244, 40 N.E. 835; Lake Shore & M. S. Ry. Co. v. Bodemer, 139 Ill. 596, 29 N.E. 692, 32 Am.St.Rep. 218; see, also, Perna v. Rapid R. Co., 6 Cir., 250 F. 728.

This rule of law is not controverted. The contention is that the evidence is not sufficient to support a finding of willfull-

ness. We think it is. We have set out the evidence above and considered the applicable law, supra, in connection with the discussion of defendant's motion for a directed verdict.

On this issue the defendant requested and the court refused to give the following instruction, to which refusal the defendant objected on the sole ground that "we think that is a correct definition [of willfullness and wantonness] and should have been given":

"The defendant requests that in your Honor's charge to the jury you include the following proposition:

"In order to find the defendant guilty of willfulness or wantonness the evidence must show more than negligence or carelessness. Willfulness or wantonness imports a willingness to inflict injury, or is such conduct as shows an utter disregard for the lives and safety of others, or is such conduct as would show a general intent to inflict injury. In other words, where there is a particular intention to injure or a degree of willful or wanton recklessness which authorizes a presumption of an intention to injure generally, the act ceases to be merely careless or negligent and becomes willful or wanton. In such a case there may be an actual intent to injure or such conscious or intentional disregard of the rights of others as to warrant a conclusion that an injury was intended. A charge of willfulness or wantonness implies an act intentionally done in disregard of another's rights and not a mere careless or negligent omission of duty."

▮▮▮▮ From the cases cited supra, it is apparent that the term "willful" in personal injury and death cases has acquired a technical meaning in Illinois; and the law is generally that the meaning of such terms occurring in instructions to a jury should be explained or defined when requested. 64 C.J. Trial, § 556, p. 617; People v. Blevins, 251 Ill. 381, 96 N.E. 214, Ann.Cas.1912C, 451; Denver & R. G. R. Co. v. Norgate, 8 Cir., 141 F. 247, 6 L.R.A., N.S., 981, 5 Ann.Cas. 448; Milwaukee Mechanics Ins. Co. v. Oliver, 5 Cir., 139 F.2d 405, 407. The special importance of the subject in this case arises from the fact that, as pointed out above and as the jury was instructed by the court, contributory negligence of an injured party does not, under Illinois law, relieve a defendant from liability for damages caused by his willful acts or omissions.

▮▮▮ The court, we think, was warranted under the foregoing rules in refusing to give the requested instruction for at least two reasons: First, the instruction was not definitely applicable to the issue and to the evidence in that it purported to define the legal meaning of the words "willfullness or wantonness", and the words wanton or wantonness are not found either in the complaint or in the instructions given.

The words willful and wanton have not been distinguished with meticulous care in the Illinois decisions. The two words are frequently used as synonyms by the Illinois courts. But both Webster's International Dictionary and the Century Dictionary construe the word wanton to include an element of malice, whereas in the Jeneary case, supra, the court, said that a defendant may be guilty even of "wanton conduct", "having no intent to injure." See, also, St. Louis & S. F. R. Co. v. United States, 8 Cir., 169 F. 69, 71; United States v. Illinois Cent. R. Co., 303 U.S. 239, 243, 58 S.Ct. 533, 82 L.Ed. 773.

Second, the Illinois law does not require that the evidence show a particular intention to injure to constitute willfullness.

For these reasons the requested instruction, had it been given, might have confused and misled the jury. Without a correct explanation of the Illinois law the jury might, and probably would, have understood that unless the evidence warranted a finding of malice the defendant could not be found to have acted willfully. The requested instruction would thus have cast a greater burden upon the plaintiff than the law imposed.

As said by Chief Justice Marshall in the Brooks case, supra, the language of the requested instruction "presents different ideas to the mind, and is susceptible of different constructions." And, again, "there is no error in rejecting a motion [for a requested instruction] of this description,

unless it ought to have prevailed in the very terms in which it was made. Nor is a Court required to give opinions [instructions] on abstract propositions, not supported by any evidence in the cause."

In this case the evidence would not support an inference that there existed either a particular or a malicious intention to injure or kill the decedent. The evidence would support an inference, however, that there was an intention to run trains through Salem at 70 miles an hour without equipping the Broadway crossing with a proper protective device; and that the defendant, with knowledge of the hazardous situation and of the numerous fatal accidents which had occurred thereat, had failed for so long to install such a device that it was conscious that injury would probably result to some traveler because of such failure, but was indifferent to the consequences.

The defendant next contends that the court erred in instructing the jury that it was not relieved of the duty of providing adequate protection at the Broadway crossing merely because the Illinois Commerce Commission had not previously ordered it to do so, "as an order or rule of a Commerce Commission prescribes only the minimum standard of conduct, but not necessarily that which fulfills the requirements of due care."

■ In its brief the defendant says that "It is true that where special dangers exist at a crossing, it is not a defense to show that the Commerce Commission had not required a correction, but the courts have never gone so far as to say what correction should be made." The short answer to this contention is, therefore, that the court in the instant case did not go so far as to say what particular correction should be made. The court instructed only that if the jury found that an unusually hazardous and dangerous condition existed at the crossing on November 24, 1944, it should then determine whether that condition had "existed for a sufficient length of time prior to November 24, 1944, for the defendant, in the exercise of ordinary care, to have remedied that condition by the installation of crossing gates or other protective device." No particular device was prescribed by the court. The criticism of the instruction is directed particularly to the use of the words "minimum standard of conduct". But the courts generally hold that a failure to install protective devices ordered by a commerce commission or by statute is negligence per se, and that failure to provide other devices required by the exercise of ordinary care or reasonable prudence at extra hazardous crossings may be submitted to a jury. Wagner v. Toledo, P. & W. R. R., 352 Ill. 85, 185 N.E. 236; Willett v. Baltimore & O. S. W. R. Co., 284 Ill.App. 307, 1 N.E.2d 748, 751; Pokora v. Wabash R. Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049; Grand Trunk R. Co. v. Ives, supra. Ordinary care or reasonable prudence for the public safety is the standard fixed by law and not merely the devices ordered by a commission. The court properly so advised the jury. Wagner v. Toledo, P. & W. R. R., supra.

■ The court instructed the jury that if it found from all the evidence that the Broadway crossing was unusually hazardous and dangerous it might then determine whether the defendant was negligent in operating the passenger train on the occasion in question toward and over the crossing at approximately 70 miles an hour. The defendant argues that since the crossing was provided with a flasher light it was not negligent so to operate the train. The argument ignores the evidence that the flasher light operated continuously when a car was spotted west of the crossing on the passing track so as to render it useless as a warning signal a part of the time. When the fatal collision occurred it may have been in operation because of the cars standing on the passing track. The hazard could have been removed by reducing the speed of the trains or by installing a safety device adequate to meet the danger created by the situation. The instruction complained of properly submitted the question of negligence in operating trains at a high speed over the crossing in view of the hazards resulting from the conditions existing.

Dedendant's requested instruction 8a reads:

"The defendant requests that in your Honor's charge to the jury you include the following proposition:

"That where a railroad train on a railroad track and a motor vehicle on a highway each approaches a railroad crossing at the same time and the persons in charge of the railroad train and the driver of the motor vehicle are each aware of the approach of the other, it is not the duty of the persons in charge of the train to stop the train, but it is the duty of the traveler on the highway to stop his vehicle, if he has a reasonable opportunity to do so, and not attempt to pass in front of the advancing train."

The court refused to give the instruction in the form requested but gave instead the following:

"You are instructed that every person is bound to know that a railroad crossing at grade is a dangerous place, and in order to be in the exercise of due care for his own safety, he must approach the crossing with the amount of care commensurate with the known danger, the greater the known danger, the greater is the amount of care that should be exercised. And if the jury find and believe from the evidence that the plaintiff's decedent in approaching the crossing in question failed to exercise such care that such failure, if any, and not any wrongful act or omission of the defendant caused his fatal injury, then the plaintiff can not recover and your verdict should be in favor of the defendant."

▇▇▇ Since there was no evidence that the persons in charge of the railroad train and the decedent, driver of the motor vehicle, were "each aware of the approach of the other", the requested instruction was not appropriate. The instruction given was a correct statement of the law applicable to the evidence in the case. The Robertson case, supra, cited by the defendant, is not in point.

▇▇ Finally, the defendant argues that the submission of the questions of willfullness and recklessness affected the jury's verdict. Nothing in the record sheds any light on that subject. Since we have held that it was proper to submit these issues to the jury, defendant's surmise is immaterial and the argument is irrelevant. The defendant filed a motion for judgment non obstante veredicto or for a new trial in which it alleged that the verdict is excessive. The motion was overruled by the court. Upon the record here we cannot say that in so ruling the court abused its discretion.

Having examined the record and the contentions of the parties on appeal, and finding no reversible error, the judgment appealed from is affirmed.